**UNITED STATES of America, Plaintiff–Appellant,**

v.

**$37,780 IN UNITED STATES CURRENCY, Defendant–Appellee,**

**Victorino Hernandez, Claimant.**

**No. 1159, Docket 90–6003.**

United States Court of Appeals, Second Circuit.

Argued April 16, 1990.

Decided Dec. 3, 1990.

Russell P. Buscaglia, Buffalo, N.Y., Asst. U.S. Atty., W.D.N.Y. (Dennis C. Vacco, U.S. Atty., W.D.N.Y., Sara Criscitelli, Atty., U.S. Dept. of Justice, of counsel), for appellant.

Michael P.J. McGorry, Buffalo, N.Y. (Silverberg, Yood, Sellers & McGorry, of counsel), for claimant/appellee Hernandez.

Before PRATT and MINER, Circuit Judges, and RE, Chief Judge for the United States Court of International Trade, sitting by designation.

GEORGE C. PRATT, Circuit Judge:

On this appeal, we must determine what effect the unconstitutional seizure by government agents of $37,780 in currency has upon a subsequent civil action brought under 21 U.S.C. § 881 and 19 U.S.C. § 1610 for forfeiture of the currency. The district court granted summary judgment to the claimant, holding that the illegal seizure barred any later forfeiture action, and it ordered the money returned to the claimant despite the government's clear showing that by the time of the motion there was probable cause to maintain the forfeiture action. We disagree with the district court and therefore reverse the judgment and remand for further proceedings.

## BACKGROUND

On February 8, 1989, at the Buffalo, New York, airport, claimant Victorino Hernandez purchased with cash a one-way ticket from Buffalo to New York City for a flight that was scheduled to depart a few minutes later. As Hernandez passed through an airport checkpoint, security officers observed on the screen of their X-ray scanner that his attache case appeared to be filled with cash. They stopped Hernandez and asked him if he would open his luggage; Hernandez complied, and the officers' suspicions were confirmed: the case contained $37,780 in cash, over $35,000 of it in denominations of $20 or smaller. The security officers called agents of the Drug Enforcement Agency ("DEA") to the scene.

When asked why he was carrying such a large amount of cash, Hernandez replied that he was flying to New York City to open a restaurant. He stated that he had no occupation other than working for the DEA, but he assured the officers that the money in his possession was not DEA mon-

ey. He insisted that he had never been arrested on drug charges, and that the money had come from his mother in the Dominican Republic. At first Hernandez stated that his mother had sent him a check, which he had cashed; but later he claimed that his mother had brought the currency with her from the Dominican Republic. Finally, Hernandez stated that he had been driven to the airport by a woman named Linda Matias, whom he claimed he did not know well.

Although the officers and agents did not arrest Hernandez, they did seize and retain custody of the currency. On further investigation, they learned that (1) Hernandez did not work for the DEA; (2) he had four prior felony drug convictions in the past three years; (3) he and Matias, who had driven him to the airport, apparently shared the same dwelling; (4) both of them were under investigation by local law enforcement agencies for drug activities; and (5) confidential sources reported that Hernandez had been, and currently was, involved in illegal drug distribution. None of these facts was disputed by Hernandez in the district court; instead, for his defense to the forfeiture action he relied solely on the lack of probable cause at the time of the seizure.

When the DEA initiated an administrative forfeiture proceeding against the currency under 21 U.S.C. § 881(a)(6), Hernandez, pursuant to 19 U.S.C. § 1608, filed a claim to the money, thereby making a judicial proceeding necessary to accomplish the forfeiture. The government then filed a summons and complaint commencing this civil *in rem* forfeiture action against the property. In his answer Hernandez denied that the currency was forfeitable, and he moved for summary judgment on the ground that there had been no probable cause for the seizure. He argued primarily that the sufficiency of probable cause should be tested as of the time of the seizure at the airport, that the agents had found neither narcotics nor drug paraphernalia when they seized the currency, that at the time of the seizure the agents lacked any other evidence of probable cause, and that their seizure of the currency was

therefore unconstitutional. This, he argued, required dismissal of the forfeiture action.

The government argued primarily that it did have probable cause to seize the currency at the airport, but argued in the alternative that even if it did not, this was not fatal to its forfeiture proceeding, because probable cause for the forfeiture should be determined at the time of the forfeiture hearing.

The district court concluded that if the government was to avoid summary judgment and justify the forfeiture, it was required to establish that it had probable cause at the time of the seizure, and this it had failed to do. According to the district court, the government had seized Hernandez's currency "simply because he possessed it and because federal agents did not like his proffered explanation for such possession." Finally, the district court decided that because the "mere exclusion of unconstitutionally seized property from a contested proceeding for its forfeiture is of no practical effect", a harsher deterrent was required. Accordingly, the district court not only granted Hernandez's summary judgment motion and dismissed the forfeiture complaint, but it also ordered the government to return the $37,780 to Hernandez and prohibited the government from instituting any other action for forfeiture against the same property.

The government appeals.

## DISCUSSION

Part of the difficulty in this case comes from the failure of the district court and the parties to keep distinct two different statutory events: (1) the agents' seizure of the money without judicial process, authorized by 21 U.S.C. § 881(b)(4); and (2) this civil action for judicial forfeiture of the money, authorized by § 881(d). Confusion of these two events is frequently enhanced because "probable cause" is the standard that guides both events.

This confusion may have caused both Hernandez and the district court to

end their analysis upon finding that the agents lacked probable cause at the time of the seizure. However, dismissal of the action, a different statutory event from seizure without judicial process, was required only if on the summary judgment motion the government was unable to establish probable cause that the seized money was related to drug activity. As in this case, different evidence may enter into the determinations of "probable cause" at the two separate events; more significantly, different consequences would flow from the government's failure to establish "probable cause" for either event.

Section 881(a)(6) of Title 21 declares that money that is illegally exchanged for a controlled substance, that constitutes the proceeds from an illegal sale of a controlled substance, or that is used, or is intended to be used, to illegally purchase a controlled substance, "[is] subject to forfeiture to the United States."

Seizure of property that is declared forfeitable in § 881(a) is dealt with in subsection (b) of § 881. Judicial process for such a seizure, which is *not* at issue in this case but which figures in the overall forfeiture picture, is authorized both under the Supplemental Rules for Certain Admiralty and Maritime Claims and under the search warrant procedures of the Federal Rules of Criminal Procedure. Seizure by the Attorney General *without* judicial process is authorized, *inter alia,* when "the Attorney General has *probable cause* to believe that the property is subject to civil forfeiture under this subchapter." 21 U.S.C. § 881(b)(4) (emphasis added).

In the event of such a seizure without judicial process, the government must institute forfeiture proceedings under § 881(d) "promptly". *Id.* Under § 881(d), proceedings for summary and judicial forfeiture and condemnation of property shall follow the provisions for forfeiture that are set forth in the customs laws. These provisions are found at 19 U.S.C. §§ 1595a to 1615. Section 1615 provides that in a civil forfeiture action the claimant shall bear the burden of proof "*Provided,* That probable

cause shall be first shown for the institution of such suit or action".

Thus, to seize the property at the airport properly, the agents, as representatives of the Attorney General, were required by 21 U.S.C. § 881(b)(4) to have "probable cause to believe" that the money was "subject to civil forfeiture under this subchapter"—*i.e.* that it was drug-related in one of the senses described in § 881(a)(6). The fourth amendment also required the government to have "probable cause" in order to seize the money from Hernandez.

The district court concluded that the government's seizure at the airport was unlawful because at the time of the seizure the agents lacked the probable cause required by the fourth amendment. When the agents seized the money, their evidence of probable cause consisted of the $37,780 in small bills, together with Hernandez's conflicting explanations of how he obtained it and why he was carrying such a large sum in cash. In another context, we have held that "[t]he possession of large amounts of unexplained cash in connection with evidence of narcotics trafficking on a large scale is similar to the possession of special means, such as tools or apparatus, which is admissible to show the doing of an act requiring those means." *United States v. Tramunti,* 513 F.2d 1087, 1105 (2d Cir.), *cert. denied,* 423 U.S. 832, 96 S.Ct. 54, 46 L.Ed.2d 50 (1975) (citations omitted). It may well be that through the byzantine world of forfeiture law, congress and the courts have implicitly created a rebuttable presumption that the possession of large amounts of cash is *per se* evidence of illegal activity. Certainly, in this case the agents seized the $37,780 on the strength of its existence and little else.

The government claims that it also had Hernandez's criminal record in its files and that it can now rely on that information, even if the seizing agents were not aware of it at the time of seizure. We do not decide this question, but instead assume for purposes of this appeal that the agents lacked probable cause to seize the cash. However, our assumption that the seizure

at the airport was invalid does not dispose of the appeal.

The judgment appealed from has dismissed the civil action brought under § 881(d) essentially because the earlier event, the seizure without judicial process under § 881(b), lacked probable cause. The unconstitutionality of that seizure may at an appropriate time require suppression of some evidence under the exclusionary rule, *see Weeks v. United States*, 232 U.S. 383, 34 S.Ct. 341, 58 L.Ed. 652 (1914), which dictates in a criminal case that the seizure and all evidence that is derived from it (the so-called "fruit of the poisonous tree") must be suppressed and cannot be used at trial. *See, e.g., Nix v. Williams*, 467 U.S. 431, 441–48, 104 S.Ct. 2501, 2507–11, 81 L.Ed.2d 377 (1984). The reach of the exclusionary rule into civil proceedings, however, remains somewhat uncertain. *See I.N.S. v. Lopez–Mendoza*, 468 U.S. 1032, 1041, 104 S.Ct. 3479, 3484–85, 82 L.Ed.2d 778 (1984). In *One 1958 Plymouth Sedan v. Pennsylvania*, 380 U.S. 693, 85 S.Ct. 1246, 14 L.Ed.2d 170 (1965), the Court held that the exclusionary rule may apply in a forfeiture proceeding, but the Court has also suggested that in a civil forfeiture proceeding the exclusionary rule does not apply to the forfeitable property itself. *See Lopez–Mendoza*, 468 U.S. at 1040, 104 S.Ct. at 3484.

The district court, troubled by what it saw as the government's "cavalier disregard for the fourth amendment", and seeking a sharper deterrent than the one offered by the exclusionary rule, enjoined the government from further attempts to forfeit the money. Neither statute nor case law, however, supports that drastic remedy. Rather, in *United States v. Premises and Real Property at 4492 S. Livonia Rd.*, 889 F.2d 1258 (2d Cir.1989), decided after the district court's order in this case, we stated that an unlawful seizure "would only preclude the government from introducing any evidence gained by its improper seizure" and would not result in a dismissal with prejudice. *Id.* at 1266.

■ In short, following the Supreme Court's suggestion in *Lopez–Mendoza* and our holding in *Livonia Rd.*, we hold that an illegal seizure of property does not immunize that property from forfeiture, that the property itself cannot be excluded from the forfeiture action, and that evidence obtained independent of the illegal seizure may be used in the forfeiture action. As we stated in *Livonia Rd.*, "[o]nce a forfeiture proceeding is brought, if further evidence is legally obtained to justify the government's belief, there is no persuasive reason to bar its use." *Id.* at 1268. While we there warned that "the government cannot start a forfeiture proceeding in bad faith", the type of bad faith that concerned us, "wild allegations based on the hope that something will turn up to justify * * * [a] suit", is not present here. *Id.*

The government apparently stumbled into this seizure. Hernandez was carrying an extremely large sum of cash in small denominations, demonstrating that he was either inordinately carefree with his money or was involved in illegal activity. His evasive, confused explanation for carrying such a large sum, including his claim that he worked for the DEA, only further aroused the suspicions of the government agents.

Thus, the presence or absence of probable cause at the time of the seizure at the airport is a relatively narrow issue that may have evidentiary consequences in subsequent proceedings. When we turn to the issue of whether the forfeiture action itself should be dismissed, we find under 19 U.S.C. § 1615 that upon Hernandez's motion for summary judgment, the burden was on the government to establish that it then had probable cause for the forfeiture. In a case where seizure of the property followed the filing of a forfeiture complaint and was pursuant to a warrant, we held that the government "need not demonstrate probable cause until the forfeiture trial." *United States v. Banco Cafetero Panama*, 797 F.2d 1154, 1162 (2d Cir.1986). The same rule applies in a case such as this, where the property has been seized by the government prior to filing a complaint.

At the time of Hernandez's summary judgment motion, the agents had conducted

**164**

their investigation and not only determined the falsity of many of the statements Hernandez made at the airport, but also had established to a convincing degree his extensive involvement in drug activities. The evidence presented to the district court on the motion easily satisfied the statutory requirement of probable cause to believe the forfeiture action could be maintained against the money under § 881(a)(6), so that the burden of proof has shifted to claimant Hernandez under 19 U.S.C. § 1615 to establish that the defendant money is not drug related and belongs to him.

Accordingly, we reverse the judgment of the district court and remand for further proceedings to provide Hernandez with the opportunity to meet that burden.