**UNITED STATES of America, Plaintiff,**

v.

**ALL FUNDS PRESENTLY ON DEPOSIT OR ATTEMPTED TO BE DEPOSITED IN ANY ACCOUNTS MAINTAINED AT AMERICAN EXPRESS BANK, American Express Bank, Ltd., Citibank International, Citibank, N.A., Delta National Bank, and Capitol Bank in the Names of Cambitur, S.A., Casa De Cambios, Cambidex, Multicambio, S.A., Michel Duchamp, JCJ, Inc., and all Related Entities and Individuals (Collectively Referred to as the Claimants), Including, but not Limited to, American Express Bank Account No. 00800045, American Express Bank, Ltd. Account No. 000708008, Citibank N.A. Account No. 36964602, Citibank, N.A. Account No. 36994895, Delta National Bank Account No. 602187, and Capitol Bank Account No. 140023033, and all Property Traceable Thereto, Defendants.**

No. CV–92–5310.

United States District Court, E.D. New York.

Feb. 9, 1993.

Arthur P. Hui, Asst. U.S. Atty., Brooklyn, NY, for U.S.

Mario Malerba, Malerba, Carbone & LaSale, Kew Gardens, NY, for Cambitur S.A.

## MEMORANDUM AND ORDER

GLASSER, District Judge:

Claimant Cambitur S.A. ("Cambitur") brings this "emergency" motion for return of property seized in this civil forfeiture action. More specifically, Cambitur seeks the return of $584,445.41 that it sent to American Express Bank (or "the Bank") on November 12, 1992. For the reasons discussed below, claimant's motion is hereby granted. However, execution of this order is stayed for five days to give the government an opportunity to file an appeal.

### FACTS

On November 12, 1992, the government filed a verified complaint *in rem* in this action. That complaint requested seizure and forfeiture of all funds "presently on deposit" in several designated bank accounts and, all property traceable thereto, on the grounds that the funds constituted proceeds traceable to the sale of narcotics

and had been, and were being, used to facilitate the laundering of narcotics proceeds, in violation of 18 U.S.C. §§ 1956 and 1957 and 21 U.S.C. § 841 *et seq.* Among the accounts that the government sought to seize were American Express Bank accounts numbered 00800045 and 000708008, both of which were held by the Bank in the name of Cambitur, S.A. Those accounts contained a total of $1,562,994.42. On the same day that the complaint was filed, the Clerk of this Court issued a warrant of arrest, pursuant to Rule C(3) of the Supplemental Rules for Certain Admiralty and Maritime Claims (the "Supplemental Rules"), for the seizure of the defendant funds and all property traceable thereto.

On the evening of November 12, 1992, after the warrant had been served, American Express Bank received, via DHL delivery, a package containing a deposit of $584,445.41; this package was sent to the Bank by claimant Cambitur. The Bank did not process the funds contained in the package nor did it credit those funds to Cambitur's accounts. Rather, the Bank advised the government that they had received this package and, in response, were told to hold onto the funds. Later that same evening, counsel for Cambitur spoke to Saverio Mirarchi, counsel for American Express Bank, and demanded the return of the DHL package. Mirarchi informed Cambitur that the package could not be returned because the government sought its attachment.

On November 13, 1992, the day after American Express Bank received the DHL package, the government filed an amended verified complaint *in rem*, and the Clerk of this Court issued a supplemental warrant for arrest. The amended complaint sought the same funds in the subject accounts, but now included, as well, "all funds attempting to be deposited" in those accounts. Cambitur contests the legality of this seizure and moves for return of its $584,-445.41.[1]

The government responds to Cambitur's motion by claiming that its seizure of the DHL package was lawful. More specifically, the government contends that 21 U.S.C. § 881(b)(4), in conjunction with the Supplemental Rules, authorizes the Attorney General or his representative to seize property without a warrant if there is probable cause to believe that the property is subject to civil forfeiture for a violation of the statute's substantive provisions. Although the only "probable cause" that existed at the time of this seizure admittedly was that the DHL package contained funds intended for deposit into the defendant accounts, the government nevertheless argues that it may establish probable cause in a civil forfeiture case based on information gathered after the seizure occurs.

The United States submits the following information going to its post-seizure basis for probable cause. On November 16, 1992, the first business day after the seizure, Drug Enforcement Administration Special Agent Juan Arrivillaga went to American Express Bank's offices at One World Financial Center and took possession of the contents of the DHL package, specifically four bundles of checks and money orders. *See* Declaration of Special Agent Juan Arrivillaga at ¶ 12. Later that day, a narcotics sensitive canine ("K–9 unit") tested the bundles of money orders and checks for the presence of illegal narcotics and alerted positive to the scent of cocaine. *Id.* at ¶ 13. More importantly, the money orders contained in those bundles were in small, even denominations of United States currency similar to the money orders that the government previously had traced to the premises of a known money launderer. *Id.* at ¶¶ 12–13.

Before turning to the merits of the arguments briefly set forth above, it is worthwhile to note that since Cambitur is an exchange house or "casa de Cambios" located in Ecuador, South America, its business is exchanging large sums of money. A letter from Dr. Galo Larrea Donoso, the Consul General of the Republic of Ecuador in New York, informs this court that Cambitur is an established and respected busi-

---

1. At this time, Cambitur does not seek return of the amounts seized pursuant to the original warrant, and this court makes no findings as to probable cause to seize those accounts.

ness in Ecuador. It moves via order to show cause because the Ecuadorian government is currently threatening to close down Cambitur's operations unless the Cambio can obtain sufficient funds to satisfy its outstanding debts. Bearing all these facts in mind, this court now turns to the legality of the seizure.

## DISCUSSION

This court faces two questions: first, whether the government possesses the authority to seize property without judicial process, in other words a valid warrant; and second, whether the government may establish the probable cause for such a seizure *after* the seizure occurs. Each of these questions are addressed below.

 Section 881(a)(6) of Title 21 of the United States Code declares that money that is illegally exchanged for a controlled substance, that constitutes the proceeds from an illegal sale of a controlled substance, or that is used or intended to be used, to illegally purchase a controlled substance, "[is] subject to forfeiture to the United States." 21 U.S.C. § 881(a)(6) (1988). Seizure of property forfeitable under subsection (a) is discussed in subsection (b). Relevant to this motion is 21 U.S.C. § 881(b)(4) which provides:

> (b) Any property subject to civil forfeiture to the United States under this subchapter may be seized by the Attorney General upon process issued pursuant to the Supplemental Rules for Certain Admiralty and Maritime Claims by any district court of the United States having jurisdiction over the property, *except that seizure without process may be made when—* ...
>
> (4) the Attorney General has probable cause to believe that the property is subject to civil forfeiture under this subchapter.

As this statute makes clear, the government is correct in arguing that 21 U.S.C.

§ 881(b)(4) authorizes the Attorney General or his representative to effect a seizure absent a warrant if there is probable cause to believe that the property seized is subject to forfeiture. *See United States v. $37,780 in United States Currency,* 920 F.2d 159, 162 (2d Cir.1990); *see also United States v. Valdes,* 876 F.2d 1554, 1558 (11th Cir.1989). In the event of a seizure without judicial process, § 881(b) also requires the government to institute proceedings under § 881(d) "promptly." 21 U.S.C. § 881(b); *$37,780 in United States Currency,* 920 F.2d at 162.

Applying this standard to the facts at hand, the seizure by the United States of the $584,445.41 in the DHL package was proper *only if* the Assistant United States Attorney who effected the seizure had probable cause to believe that the funds in question were subject to forfeiture. The question remains, then, whether the absence of probable cause at the moment of the seizure requires return of those funds. In analyzing this question, four Second Circuit cases—*$37,780 in United States Currency,* 920 F.2d 159, cited above, along with *United States v. Banco Cafetero Panama,* 797 F.2d 1154 (2d Cir.1986), *United States v. LaSanta,* 978 F.2d 1300 (2d Cir.1992), and *United States v. $31,990 in United States Currency,* 982 F.2d 851 (2d Cir.1993)—are helpful. Before discussing these cases, however, it is helpful to recognize that they arose a different context from that in which this motion arises; specifically, these and other forfeiture cases reached courts as motions for summary judgment or criminal post-trial motions, rather than as motions for return of property. Accordingly, this action implicates slightly different concerns on behalf of the property owner.[2]

The case of *$37,780 in United States Currency,* 920 F.2d at 160, involved a seizure by DEA agents of a suitcase filled

---

**2.** The government argues that Cambitur's reliance on Rule 41(e) of the Federal Rules of Criminal Procedure is misplaced because the government has commenced a civil forfeiture action against the defendant monies. However, the validity of that action's commencement is

the precise question facing this court. At the time that the $584,445.41 was seized, no civil forfeiture action existed against those monies; whether the subsequent filing of the *in rem* complaint properly commenced the forfeiture action is currently under scrutiny.

with cash that claimant was attempting to transport via airplane from Buffalo to New York City. The case arrived at the Second Circuit on appeal from the district court's holding that an illegal seizure barred a subsequent forfeiture action; the district court had granted summary judgment in favor of the claimant and ordered return of the money despite the government's "clear showing that by the time of the motion there was probable cause to maintain the forfeiture action." *Id.* at 160. The Second Circuit disagreed, holding that an illegal seizure did not invalidate a subsequent forfeiture action; the appellate court therefore reversed the grant of summary judgment. *Id.* at 164.

Finding that the agents seized the $37,-780 "on the strength of its existence and little else," *id.* at 162, the Second Circuit in *$37,780 in United States Currency* discussed the difference between probable cause for seizure without judicial process (under § 881(b)(4)) and probable cause for judicial forfeiture (under § 881(d)):

The government claims that it also had Hernandez's criminal record in its files and that it can now rely on that information, even if the seizing agents were not aware of it at the time of seizure. *We do not decide this question,* but instead assume for purposes of this appeal that the agents lacked probable cause to seize the cash. However, our assumption that the seizure at the airport was invalid does not dispose of the appeal.

The judgment appealed from has dismissed the civil action brought under § 881(d) essentially because the earlier event, the seizure without judicial process under § 881(b), lacked probable cause. The unconstitutionality of that seizure may at an appropriate time require suppression of some evidence under the exclusionary rule.... The reach of the exclusionary rule into civil proceedings, however, remains somewhat uncertain.... [W]e hold that an illegal seizure of property does not immunize that property from forfeiture, that the property itself cannot be excluded from the forfeiture action, and that evidence obtained independent of the illegal seizure may be used in the forfeiture action. *Id.* at 162–63 (emphasis added). In considering whether it should dismiss the forfeiture action altogether, the court cited *United States v. Banco Cafetero Panama,* 797 F.2d 1154, 1162 (2d Cir.1986), for the proposition that the government need not demonstrate probable cause until the forfeiture trial:

In a case where seizure of the property followed the filing of a forfeiture complaint and was pursuant to a warrant, we held that the government "need not demonstrate probable cause until the forfeiture trial." *United States v. Banco Cafetero Panama,* 797 F.2d 1154, 1162 (2d Cir.1986). The same rule applies in a case such as this, where the property has been seized by the government prior to filing a complaint.

*$37,780 in United States Currency,* 920 F.2d at 163. The Second Circuit then found that the government had met its burden of proof in establishing probable cause and remanded the case for trial. *Id.* at 164.

In this case, the United States relies on *$37,780 in United States Currency,* in conjunction with *Banco Cafetero,* 797 F.2d at 1154, to argue that the Attorney General or his representative need not *have* probable cause to effect a seizure under § 881(b)(4) so long as it later *obtains* and *demonstrates* probable cause. *Banco Cafetero* involved a government attempt to seize and forfeit monies on deposit in various bank accounts on the grounds that the defendant monies constituted proceeds traceable to an exchange of a controlled substance. The banks moved to vacate the warrant of arrest, and Judge Goettel denied this motion for the following reason:

The government need not establish probable cause when it commences a forfeiture action and obtains the warrants for an arrest. Rule C(3) of the Admiralty Rules outlines the process for seizure as follows: "[In actions by the United States for forfeitures for federal statutory violations, the clerk, u]pon the filing of the complaint ... shall forthwith issue

a warrant for the arrest of the vessel or other property that is the subject of the action and deliver it to the marshal for service." Thus the rules contemplate that the clerk shall issue the warrants for arrest and the court shall determine whether the government had probable cause. Logic, therefore, dictates that probable cause need not be *shown* when the government obtains the warrants for arrest. Ultimately, the government must *show that it had probable cause at the time of commencement of the actions.* It need not establish this, however, until the forfeiture trial.

*United States v. Banco Cafetero International,* 608 F.Supp. 1394, 1405 (S.D.N.Y. 1985) (emphasis added), *aff'd,* 797 F.2d 1154 (2d Cir.1986). The Second Circuit affirmed Judge Goettel's decision stating that:

> Under the drug forfeiture statute, the Government may seize property *upon the filing of a complaint* and need not *demonstrate* probable cause until the forfeiture trial.

*Banco Cafetero,* 797 F.2d at 1162 (emphasis added). The court then rejected the moving banks' argument that they were entitled to an immediate probable cause hearing in advance of the forfeiture trial. *Id.* at 1163.

*Banco Cafetero*'s holding is clear: as shown by the highlighted language from both the lower court and Second Circuit opinion, the United States need not demonstrate that it had probable cause to seize property until trial, and due process does not require a court to hold a hearing in advance of that trial. However, the government's argument fails to recognize that just because a court must *determine* probable cause at trial does *not* mean that the Attorney General may seize property without probable cause. As *$37,780 in United States Currency* established, the question of whether subsequently obtained evidence may be used to establish probable cause remains open. *$37,780 in United States Currency,* 920 F.2d at 162 ("The government claims that it ... can now rely on that information, even if the seizing agents were not aware of it at the time of seizure.

We do not decide this question...."). Two recently decided cases from this Circuit help this court determine the correct response to whether a seizure without probable cause and without a warrant is lawful.

First, in *LaSanta,* 978 F.2d at 1300, a defendant who was convicted by a jury of conspiring to distribute and possessing with intent to distribute cocaine, challenged the admission of evidence derived from a seizure and search of a limousine that he drove. The officers effected the warrantless seizure pursuant to the civil forfeiture statute at issue in this motion. Addressing the "threshold question" of the government's authority to effect seizures without warrants under 21 U.S.C. § 881, Judge Pratt held that the statute did not—and could not—create an exception to the fourth amendment's warrant requirement. *Id.* at 1304. He explained as follows:

> We find no language in the fourth amendment suggesting that the right of the people to be secure in their "persons, houses, papers, and effects" applies to all searches and seizures except civil-forfeiture seizures in drug cases. U.S. Const. amend. IV. We reject out of hand the government's argument that congress can conclusively determine the reasonableness of these warrantless seizures, and thereby eliminate the judiciary's role in that task of constitutional construction. *See* U.S. Const. art. VI, cl. 2. While congress may have intended civil forfeiture to be a "powerful weapon in the war on drugs," ... it would, indeed, be a Pyrrhic victory for the country, if the government's relentless and imaginative use of that weapon were to leave the constitution itself a casualty.... In short, the fourth amendment always stands as a limit on legislative and executive action.

*Id.* at 1305. The *LaSanta* court then determined that none of the recognized exceptions to the fourth amendment's warrant requirement applied to the seizure but held that the erroneous admission of the tainted evidence constituted harmless error. *Id.* at 1305–06.

Very recently the Second Circuit again had a chance to revisit the question of probable cause in the context of the civil forfeiture statute here at issue. In *United States v. $31,990 in United States Currency*, 982 F.2d 851 (2d Cir.1993), the government appealed the district court's finding that there was no probable cause to believe that the seized funds were traceable to the sale of narcotics under 21 U.S.C. § 881(a)(6). Although in that case the government obtained warrants prior to seizure, the court's language is instructive to the case at hand:

> Forfeiture is a "harsh and oppressive procedure" which is not favored by the courts. *United States v. One 1976 Mercedes Benz 280S*, 618 F.2d 453, 454 (7th Cir.1980); *United States v. One 1981 Cadillac Eldorado*, 535 F.Supp. 65, 67 (N.D.Ill.1982). Since "there is little to discourage federal agents from seizing property illegally and then seeking evidence of probable cause," courts must guard against the abuse of forfeiture in the government's zeal to apprehend and prosecute drug dealers. George C. Pratt & William B. Peterson, Civil Forfeiture in The Second Circuit, 65 St. John's L. Rev. 653, 668–69 (1991).... While we recognize the formidable task faced by the government in its war on drugs, we decline to condone the abuse of civil forfeiture as a means to winning that war.

*Id.* at 856; *see also United States v. Real Property Known as 785 St. Nicholas Ave.*, 983 F.2d 396, 402–03 (2d Cir.1993) (describing procedures by which government may seize property including seizure without judicial process but with probable cause under 21 U.S.C. § 881(b)(4)).

■ The lesson that this court extracts from the quartet of cases discussed above is that although the government need not *demonstrate* probable cause until trial, it must *possess* probable cause prior to effectuating its seizure. Any other conclusion renders meaningless both the language of 21 U.S.C. § 881(b)(4), which allows seizure without judicial process only when the Attorney General "has probable cause to believe that the property is subject to civil forfeiture," as well as the requirement that

the government obtain a warrant for seizure in the first place. More importantly, it allows the civil forfeiture statute to circumvent the clear dictates of the fourth amendment. *See LaSanta* 978 F.2d at 1304–05. Recognizing that this conclusion may encourage claimants to bring motions for return of property prior to trial and thus may undermine the *Banco Cafetero* holding, this court nevertheless refuses to ignore an ancient lesson of fourth amendment jurisprudence: namely, that the government may not validate unlawful searches through the information and evidence that the search subsequently uncovers. *See, e.g., Wong Sun v. United States*, 371 U.S. 471, 484, 83 S.Ct. 407, 415, 9 L.Ed.2d 441 (1963) ("[A] vague suspicion [cannot] be transformed into probable cause for arrest by reason of ambiguous conduct which the arresting officers themselves have provoked.... That result would have the same essential vice as a proposition we have consistently rejected—that a search unlawful at its inception may be validated by what it turns up."); *Bumper v. North Carolina*, 391 U.S. 543, 548 n. 10, 88 S.Ct. 1788, 1791 n. 10, 20 L.Ed.2d 797 (1968) ("Any idea that a search can be justified by what it turns up was long ago rejected in our constitutional jurisprudence."); *Whiteley v. Warden*, 401 U.S. 560, 567 n. 11, 91 S.Ct. 1031, 1036 n. 11, 28 L.Ed.2d 306 (1971) ("Of course, the discoveries of an illegal search cannot be used to validate the probable cause judgment upon which the legality of the search depends.").

■ Returning to the facts of this case, the government's sole basis for probable cause prior to obtaining judicial process is that the funds in question were intended for deposit in the American Express Bank accounts already under seizure. As noted above, however, for approximately forty years, Cambitur has been in the business of exchanging large sums of money. Therefore, this case is distinguishable from cases such as *$37,780 in United States Currency*, 920 F.2d at 163, in which the existence of large sums of money justifies the conclusion that an individual was involved in illegal—and specifically drug—activity.

*See also $31,990 in United Stated States Currency*, 982 F.2d 851, 854. This court therefore finds that the attempted deposit of $584,445.41 alone does not rise above the level of "mere suspicion" that the funds were traceable to drug proceeds; it is therefore insufficient to support a finding of probable cause.[3] *Banco Cafetero*, 797 F.2d at 1160.

 The government also argues that exigent circumstances justified this seizure. *See LaSanta*, 978 F.2d at 1305. Certainly Cambitur's demand that the funds be immediately returned constituted "exigency," but it is not clear how this demand satisfied the exigent circumstances exception to the warrant requirement. For that exception to apply, a law enforcement officer must have probable cause to effect a seizure prior to believing that the subject property is threatened with disappearance. *See United States v. MacDonald*, 916 F.2d 766, 769–70 (2d Cir.1990) (en banc) (quoting *Dorman v. United States*, 435 F.2d 385, 392–93 (D.C.Cir.1970) (en banc), to establish requirements for exigent circumstances, including "a clear showing of probable cause"), *cert. denied,* — U.S. —, 112 L.Ed.2d 1177 (1991).

Accordingly, as the government lacked probable cause to believe that the DHL package contained monies traceable to narcotics activity when it seized that package without judicial process under 21 U.S.C. § 881(b)(4) on November 12, 1992, this court finds the seizure unconstitutional. It is important to note, however, that even though the $584,445.41 must be returned to Cambitur, the government may continue its forfeiture action against those funds under 21 U.S.C. § 881(d). *See $37,780 in United States Currency*, 920 F.2d at 162–63. Acknowledging the impracticality of maintaining a forfeiture action against returned monies and also recognizing the tension between the procedures for seizure pursuant to the civil forfeiture statute and the fourth amendment's requirement of probable cause, this court hereby stays execution of this order for five days to allow the government an opportunity to file an expedited interlocutory appeal under 28 U.S.C. § 1292. *See Banco Cafetero Panama*, 797 F.2d at 1156–57 (stating that district court may approve interlocutory appeal when order "involves a controlling question of law as to which there is substantial ground for difference of opinion" and "an immediate appeal from the order may materially advance the ultimate termination of the litigation").

## CONCLUSION

For the reasons described above, the United States is hereby ordered to return to claimant Cambitur ˙the $584,445.41 seized prior to its deposit in defendant bank accounts at American Express Bank. However, as explained above, this order is stayed for five days to allow the government time to file an interlocutory appeal with the Second Circuit.

SO ORDERED.

---

**3.** In addition, probable cause to believe that the funds were related to some other illegal activity—such as money laundering—is not sufficient for seizure under 21 U.S.C. § 881(b)(4). *$31,-990 in United States Currency*, 982 F.2d 851, 854.