**MARINE MIDLAND BANK, N.A. & Hongkong and Shanghai Banking Corporation, Appellees, Cross–Appellants,**

v.

**UNITED STATES of America & Mary Jo White, United States Attorney for the Southern District of New York, Appellants, Cross–Appellees.**

**UNITED STATES of America, Appellant, Cross–Appellee,**

v.

**CONTENTS OF ACCOUNT NO. 000–04376–1 IN THE NAME OF HONG-KONG BANK (PANAMA), AT MARINE MIDLAND BANK, 140 BROADWAY, NEW YORK, NEW YORK; and All Funds Received by Marine Midland Bank, 140 Broadway, New York, New York, Within Three Business Days After the Service of the Seizure Warrant, for Further Credit to Account No. 000–04376–1 in the Name Hongkong Bank (Panama), Defendants-in-rem,**

Marine Midland Bank, N.A. & the Hongkong and Shanghai Banking Corporation Limited, Appellees, Cross–Appellants.

Nos. 625, 786, 626 and 785, Dockets 93–6167, 93–6199, 93–6201 and 93–6203.

United States Court of Appeals, Second Circuit.

Argued Nov. 16, 1993.

Decided Dec. 13, 1993.

Donald E. Clark, Asst. U.S. Atty., New York City (Mary Jo White, U.S. Atty., and

Gabriel W. Gorenstein, Asst. U.S. Atty., on the brief), for appellants, cross-appellees.

John K. Crossman, New York City (Frank Maas, and Phillips, Lytle, Hitchcock, Blaine & Huber, on the brief), for appellees, cross-appellants.

H. Rodgin Cohen, Bruce E. Clark, David A. Heiner, Jr., Jay Holtmeier, and Sullivan & Cromwell, New York City, submitted an amicus brief for the New York Clearing House Ass'n.

Before: FEINBERG, TIMBERS, and ALTIMARI, Circuit Judges.

TIMBERS, Circuit Judge:

The government appeals from orders entered May 11, 1993 and June 25, 1993, respectively, in the Southern District of New York, Robert P. Patterson, Jr., *District Judge*, requiring the government to return approximately six million dollars seized pursuant to 18 U.S.C. § 981 (1988 & Supp. IV 1992) from an account maintained in New York by the Hongkong and Shanghai Banking Corporation Limited (Hongkong Bank) at Marine Midland Bank N.A. (Marine Midland) (collectively, the Banks). The court held that there was an absence of probable cause to support the warrant to seize all of the funds in the account. On appeal, the government contends that there was probable cause to seize the entire account pursuant to § 981 as the "traceable proceeds" of illegal activity and that the court erred in ordering release of the funds prior to a civil forfeiture trial.

The Banks cross-appeal from the order allowing the government to retain the remaining 1.7 million dollars seized from the Hongkong Bank account. On appeal, the Banks contend that 18 U.S.C. § 984 (Supp. IV 1992) applies to the seizure of the Hongkong Bank account and that the government has not met the statute's heightened probable cause requirement. The Banks also contend that the government lacked probable cause under § 981 to seize any of the funds in the Hongkong Bank account.

We reject the government's claims and affirm the court's decision on these claims. We reject the Banks' claim that the government did not show probable cause pursuant to § 981. We remand for a determination whether § 984 requires the return of funds derived from money orders.

We affirm in part and remand in part.

I.

We summarize only those facts and prior proceedings believed necessary to an understanding of the issues raised on appeal.

The Hongkong Bank and Marine Midland are subsidiaries of HSBC Holdings, p.l.c., a United Kingdom bank holding company. The Hongkong Bank maintains a branch office in Panama (Panama branch) that serves as a clearing bank for thirty-one local and regional banks (correspondent banks) located in Panama. Each banking day, the Panama branch receives financial instruments from the correspondent banks. Through a largely automated system, the Panama branch sorts, microfilms, and delivers the instruments for payment to the financial institutions that issued the instruments. Those drawn against a financial institution located in the United States are shipped overnight to an account in the name of Hongkong Bank at Marine Midland in New York City (interbank account). There they are sorted once again, recorded, and delivered for payment to the issuing institution.

On January 6, 1993, Magistrate Judge Bernikow issued a seizure warrant pursuant to § 981 for the contents of the interbank account. The warrant was supported by the affidavit of Inspector James J. Callery of the United States Postal Service. Callery's affidavit described the Postal Service's investigation of the laundering of large sums of narcotics' proceeds through the interbank account.

The government seized the interbank account on January 7, 1993. At that time, the account had a balance of $7,695,033.55. Of this balance, approximately 1.7 million dollars was attributable to deposits of money orders. The remainder of the balance consisted of deposits attributable to negotiable instruments such as treasury checks, personal checks, commercial checks, and traveler's checks.

On January 19, 1993, the Banks commenced an action against the government seeking return of the seized funds and compensation for damages resulting from the seizure. By an order to show cause pursuant to Fed.R.Crim.P. 41(e), the Banks also moved for the return of the seized funds or, in the alternative, for the return of a portion of the funds seized and the immediate commencement of a forfeiture action against the seized funds.

On January 20, 1993, the government filed the instant civil forfeiture complaint against the interbank account pursuant to § 981. This statute subjects to forfeiture any money or property that is "involved in" or "traceable to" transactions (1) that are structured to avoid the currency reporting regulations, 31 U.S.C. §§ 5313(a) and 5324(a) (1988 & Supp. IV 1992), or (2) that violated the money laundering statutes, 18 U.S.C. §§ 1956 and 1957 (1988 & Supp. IV 1992). The complaint alleged that the Callery affidavit established that the Colombian drug cartels laundered large sums of money through the interbank account. The affidavit asserted that the cartels employed teams of people called "smurfs" to purchase money orders in small denominations in the United States. Subsequently, the money orders were smuggled to Panama where they were deposited in various financial institutions. They then were returned to the United States for negotiation via the interbank account.

The court held a hearing on the Banks' motion on January 28, 1993. The parties agreed to treat the Banks' Rule 41(e) motion as if it were brought as a motion to release the assets seized pursuant to the forfeiture action. They also agreed that the court had jurisdiction to decide the motion. To expedite the return of funds that were not linked to criminal activity, the Banks agreed to produce their records regarding the deposits in the interbank account at the time of the seizure. This agreement was finalized as a stipulation that was signed by the court. The government subsequently used the Banks' records as the basis for an amended complaint filed April 2, 1993.

In an order dated May 11, 1993 (May Order), the court required the government to release the funds that were not attributable to deposits of money orders. In an accompanying opinion the court held that the government had established probable cause that the funds attributable to money orders were subject to forfeiture as being "involved in" structuring or money laundering violations. It relied on the Callery affidavit's depiction of money laundering through the use of money orders that were cleared through the interbank account.

The court, however, rejected the government's claim that the entire account was subject to forfeiture. The court held that the non-money laundered funds in the interbank account did not become "involved in" money laundering by their mere presence in the interbank account. It rejected the government's assertion that the non-money laundered funds "facilitated" money laundering by providing cover for deposits attributable to money orders. Since the government had not established probable cause to seize all of the funds in the account, the court ordered the government to return to the Banks the funds that were not attributable to money orders. The court stayed its order for five days to permit the government to file an expedited interlocutory appeal.

Instead of filing an appeal, the government moved for reconsideration pursuant to Fed.R.Civ.P. 59(e) and Local Civil Rule 3(j) or, in the alternative, pursuant to Fed.R.Civ.P. 60(b)(6). The government identified three issues for reconsideration: (1) whether the Callery affidavit established probable cause to seize the entire account on a "traceable proceeds" theory; (2) whether its amended complaint established probable cause for forfeiture of the interbank account; and (3) whether the May Order required it to release any of the seized funds.

In an order dated June 25, 1993 (June Order), upon reconsideration the court rejected the government's claims and again ordered the government to release the funds that were not attributable to money orders. In an accompanying opinion, the court adhered to its earlier decision that only those funds that were attributable to money orders were "involved in" structuring or money laundering violations. The court held that

the government had waived its right to assert a "traceable proceeds" theory to establish probable cause that all of the funds were subject to forfeiture. It also held that the government was barred by the stipulation from using the allegations in its amended complaint to establish probable cause. Finally, it held that the government was required to abide by the court's prior order to release the funds. Once again, the court stayed execution of the order to permit the government to file the instant expedited interlocutory appeal.

On appeal, the government contends that the court erred (1) in holding that the government waived a "traceable proceeds" theory to justify seizing the entire interbank account; (2) in not allowing the government to rely on the allegations in its amended complaint to establish probable cause that all of the funds in the interbank account were subject to forfeiture; and (3) in ordering the release of funds prior to a forfeiture trial. The government does not appeal from the provision in the May Order that only the funds attributable to money orders became "involved in" money laundering violations.

On their cross-appeal, the Banks contend that § 984 requires that the government release all of the seized funds or, in the alternative, that the Callery affidavit did not establish probable cause pursuant to § 981 to seize any of the funds in the interbank account.

## II.

### (A) *THE GOVERNMENT'S CLAIMS*

(1) *Waiver of the "Traceable Proceeds" Theory*

■ On appeal, the government contends that it had probable cause to seize the entire interbank account as proceeds "traceable" to either currency reporting violations or money laundering activity. We agree with the court's holding that the government waived its right to assert a "traceable proceeds" theory.

■ The court's factual findings must be upheld unless, on the entire record, they are clearly erroneous. *United States v. Spencer,*

995 F.2d 10, 11 (2 Cir.) (per curiam), *cert. denied,* 510 U.S. ——, 114 S.Ct. 323 (1993). We affirm if any reasonable view of the record supports a finding of waiver. *Id.*

The court based its finding of waiver on repeated statements by the government. On several occasions, both in its pre-hearing memoranda and at oral argument, the government stated that it did not believe that all of the funds were "traceable" to illegal conduct and therefore it was pursuing an "involved in" theory.

Several weeks after the hearing on the Banks' motion, the government expressly asserted for the first time that it was proceeding, in the alternative, on a "traceable proceeds" theory. The court rejected this argument. It held that these assertions were made too late for the court properly to consider them.

The government acknowledges this confusion in its brief in admitting that it made certain statements that "could be interpreted as relying only on [an] 'involved in' theory". It asserts, however, that it never expressly waived its right to rely on a "traceable proceeds" theory and that the fact that it raised the theory prior to the court's May Order clearly indicates that it had not waived this theory. *United States v. George,* 975 F.2d 72, 78–79 (2 Cir.1992) (failure to raise legal theory in memorandum of law did not constitute waiver because theory was raised at oral argument in the trial court).

Under these circumstances, we believe that the court acted within its discretion in finding that the government raised the "traceable proceeds" theory too late to be considered by the court. *Ruiz v. Commissioner of Dep't of Transp. of the City of New York,* 858 F.2d 898, 902 (2 Cir.1988) (holding that the district court has discretion to reject a claim raised on a motion for reargument). Our review of the record satisfied us that the court was not clearly erroneous in relying on the government's own statements.

We also reject the government's claim that the court accepted the "traceable proceeds" theory in allowing the seizure of funds attributable to the money orders. Even if the court implicitly accepted that theory in find-

ing that there was probable cause to seize the money order funds, this does not establish that the court accepted such a theory for seizure of all of the funds in the interbank account. The government stated several times that it did not believe that all of the funds in the interbank account were derived from illegal activity and therefore it was proceeding on an "involved in" theory. The court had no reason to believe that the government also was proceeding on a "traceable proceeds" theory. Under these circumstances, the court was not clearly erroneous in relying on the government's statements to find that the government waived a "traceable proceeds" theory as to the entire interbank account.

We affirm the court's finding of waiver.

(2) *Use of the Government's Amended Complaint*

■ The government also contends that it is not required to release the interbank funds because the allegations in its amended complaint established probable cause that the entire interbank account was subject to forfeiture. The government relies on our prior decisions holding that the government may use evidence obtained independent of an illegal seizure to establish probable cause that the seized property is subject to forfeiture. *United States v. $37,780 in United States Currency,* 920 F.2d 159, 163 (2 Cir.1990); *United States v. Premises & Real Property at 4492 South Livonia Rd.,* 889 F.2d 1258, 1268 (2 Cir.1989). We reject this contention.

The court, however, did not base its decision on a determination of whether the allegations in the amended complaint were independent of the illegal seizure. It held that the government could not rely on the allegations in its amended complaint because it was barred from doing so by the stipulation entered into by the parties. The court found that the allegations in the amended complaint derived solely from the government's examination of the interbank records and that the stipulation barred the government from using the records to establish probable cause against funds not attributable to money orders. The court held that the government could not rely on allegations in the amended complaint because allowing the government to violate the terms of the stipulation would chill future litigants from entering into such stipulations.

The government's reliance on *$37,780 in United States Currency, supra,* and *Livonia Rd., supra,* is mistaken. Those decisions did not address the government's right to civil discovery where it had entered into a stipulation intended to expedite the return of seized assets. The parties here were under no obligation to enter into a stipulation. The Banks did so only upon the court's assurances that it would not allow evidence developed from the production of the records to prejudice the Banks' motion for the return of seized funds. The stipulation reflected these assurances by expressly stating that the production of the interbank records would not prejudice any claims that the Banks had in court. We do not believe that the government should be allowed to violate a stipulation into which it freely entered.

We affirm the court's decision that the government is precluded from relying on allegations in the amended complaint to establish probable cause.

(3) *Release of Funds Prior to a Forfeiture Action*

■ The government further contends that the court erred in ordering the release of funds prior to a forfeiture trial. It asserts that, even if its seizure of the interbank account were illegal, it is not required to demonstrate probable cause until a forfeiture trial. We reject this contention.

■ As we recently held in *United States v. Daccarett,* 6 F.3d 37, 46 (2 Cir.1993), the seizure and forfeiture of property are two distinct events under the civil forfeiture laws. *See also $37,780 in United States Currency, supra,* 920 F.2d at 161. While both events require the government to have probable cause, the government is not required to demonstrate probable cause until the forfeiture trial unless a claimant challenges the validity of the seizure before trial. *Daccarett, supra,* 6 F.3d at 50, 55 (stating that a challenge, such as a motion to suppress,

would require the government to show probable cause for the seizure).

Here, the Banks properly challenged the validity of the government's seizure of the interbank account by proceeding by order to show cause pursuant to Fed.R.Crim.P. 41(e). The parties and the court agreed to incorporate the Banks' motion in the civil forfeiture action. Since the Banks challenged the government's seizure, the government was obligated to show that it had probable cause to seize the interbank account. *Daccarett, supra,* 6 F.3d at 50 ("[T]he government ... need not demonstrate that it had probable cause at the time of the seizure unless a claimant challenges the validity of the seizure."). This is especially true here since the government agreed that the court had jurisdiction to decide the Banks' motion in the government's civil forfeiture action.

There is no support for the government's contention that it is entitled to retain the illegally seized funds until a forfeiture trial. The government has not established by independent evidence of probable cause that the entire interbank account is subject to forfeiture. Section (A)(2), *supra,* (rejecting use of the amended complaint to establish probable cause). We also reject the government's contention that we may not order the release of funds prior to a forfeiture trial. On several occasions, we have reviewed the government's showing of probable cause prior to a full-fledged forfeiture trial. *E.g., $37,780 in United States Currency, supra,* 920 F.2d at 163–64 (reversing summary judgment entered in favor of the claimant). Other courts in this circuit have ordered the return of seized property before the commencement of a forfeiture trial on the ground that the government lacked probable cause to seize the property at the time of the seizure. *E.g., United States v. All Funds Presently on Deposit or Attempted to be Deposited in Any Accounts Maintained at American Express Bank,* 813 F.Supp. 180, 187 (E.D.N.Y.1993) (seized property ordered returned pursuant to a Rule 41(e) motion).

We believe that release of the seized funds is especially appropriate here because the court found that the magistrate judge issued the seizure warrant without probable cause.

Pursuant to § 981, the government is not required to obtain a judicially authorized warrant to seize property. Section 981(b)(2) (government allowed to obtain a warrant issued by a court clerk pursuant to the Supplemental Rules for certain Admiralty and Maritime Claims). Here, however, the government intentionally obtained a warrant that required a probable cause determination prior to its issuance. The magistrate judge's probable cause determination should be subject to judicial review. Since the warrant was not supported by probable cause to seize the entire interbank account, the order to release the funds was appropriate to effectuate the court's power of judicial review.

It would be senseless to order the release of funds if the government immediately could commence a forfeiture proceeding and establish probable cause that the released funds were subject to forfeiture. The government has failed to establish probable cause here. There is no indication that it is likely to do so in the future. Moreover, Congress has enacted § 984 that provides interbank accounts with additional protection against civil forfeiture. Section (B)(2), *infra.*

We hold that the court properly ordered the release of funds not attributable to money orders.

### (B) *THE BANKS' CLAIMS*

#### (1) *Probable Cause Pursuant to § 981*

■ On this cross-appeal, the Banks contend that the seizure warrant was not supported by probable cause that any of the funds in the interbank account were subject to forfeiture. We disagree.

■ In reviewing seizure warrants, we accord great deference to the probable cause determinations made by the magistrates and judges who issue warrants; we resolve any doubts in favor of upholding warrants. *United States v. Vasquez,* 634 F.2d 41, 45 (2 Cir.1980). We review the court's factual findings under the clearly erroneous standard. All of the evidence is construed in a light most favorable to the government. *United States v. Glover,* 957 F.2d 1004, 1007 (2 Cir.1992).

**1126**

Seizure of the interbank account was legal under § 981 if the government had probable cause to believe that the account was subject to forfeiture. Section 981(d) (incorporating the procedures for forfeiture under 19 U.S.C. § 1615 (1988)). Probable cause is established if the government can show that it has reasonable grounds, more than mere suspicion, to believe that the property is subject to forfeiture. *United States v. Banco Cafetero Panama,* 797 F.2d 1154, 1160 (2 Cir.1986). The government must be able to show a nexus between the illegal conduct and the seized property. *Daccarett, supra,* 6 F.3d at 56 (reconciling previous decisions regarding the level above mere suspicion to which probable cause must rise). The government is not required to link a bank account to a particular illegal transaction, but it must have probable cause to connect the account to criminal activity. *Id.*

The court held that the Callery affidavit established probable cause to seize those funds in the interbank account that were attributable to money orders. It found that the affidavit established the Colombian drug cartels' *modus operandi* of money laundering through the systematic use of money orders that were negotiated through the interbank account. The Callery affidavit further linked the money orders to illegal conduct by asserting that the money orders often were deposited in accounts used by international drug cartels and that many of the money orders were stamped with symbols used as accounting tools by the cartels. Our review of the record satisfies us that the court was not clearly erroneous in relying on the assertions in the Callery affidavit. We affirm the court's holding that the Callery affidavit established probable cause to seize funds attributable to money orders.

The Banks further contend that the Callery affidavit cannot be used to establish probable cause because it is the functional equivalent of a drug courier profile. *United States v. $31,990 in United States Currency,* 982 F.2d 851, 856 (2 Cir.1993) (prohibiting the use of drug courier profile to establish probable cause). In *$31,990 in United States Currency, supra,* the government attempted to rely on a drug courier profile that "whenever two Dominicans are driving a cab on the New York State Thruway between Schenactady and New York City, any money found in the trunk ... must be connected with the illegal sale of drugs". *Id.* We held this profile to be unrealistic because it described "a 'large category of presumably innocent travelers, who would be subject to virtually random seizures' ". *Id.* (quoting *Reid v. Georgia,* 448 U.S. 438, 441 (1980) (per curiam)).

Callery's affidavit, however, clearly is distinguishable from the drug courier profile relied on by the government in *$31,990 in United States Currency, supra.* The Callery affidavit was the result of the Drug Enforcement Agency's thirteen-month investigation into the Colombian drug cartel's scheme to launder massive amounts of money orders through the interbank account. The affidavit described a specific *modus operandi* of money laundering through the interbank account. It was not a mere profile compiled from general behavior that a law enforcement agency deemed indicative of illegal conduct.

We hold that the Callery affidavit established probable cause to seize funds in the interbank account that were attributable to money orders.

*(2) Probable Cause Pursuant to § 984*

The Banks also contend that § 984 requires the government to release the funds attributable to money orders. The enactment of § 984 was intended to lessen the government's burden of proof in forfeiture proceedings against fungible property. Prior to its enactment, illegal proceeds deposited in a bank account were subject to forfeiture only to the extent that the account balance fell below the amount of the tainted deposit. *Banco Cafetero, supra,* 797 F.2d at 1158–59 (establishing the "intermediate balance" defense to forfeiture). In a forfeiture proceeding under § 984, however, the government no longer is required to show that money in a bank account is the specific money involved in the underlying offense. Section 984(b)(1)(A). Moreover, it no longer is a defense that money involved in the underlying offense has been removed from the account and replaced with legally obtained

money. Section 984(b)(1)(B). The "intermediate balance" defense is not a valid defense to forfeiture under § 984.

On the other hand, Congress specifically exempted interbank accounts from the government's enhanced forfeiture power:

"No action pursuant to this section to forfeit property not traceable directly to the offense that is the basis for the forfeiture may be taken against funds held by a financial institution in an *interbank account, unless the financial institution holding the account knowingly engaged in the offense.*"

Section 984(d)(1) (emphasis added). The Banks contend that § 984 prohibited the government from seizing the interbank account because the government has not shown that the Banks knowingly engaged in money laundering and the funds attributable to money orders also should be released. The district court did not address this issue. We remand for a determination of whether § 984 requires the release of the funds derived from money orders.

### III.

To summarize:

We affirm the order requiring the government to return the funds not attributable to money orders pursuant to § 981. On the Banks' cross-appeal, we remand for a determination whether § 984 requires the return of the funds derived from money orders.

Affirmed in part, remanded in part.