**UNITED STATES of America, Appellant,**

v.

**$31,990 IN UNITED STATES CURRENCY, Appellee.**

**No. 664, Docket 92–6187.**

United States Court of Appeals, Second Circuit.

Argued Dec. 22, 1992.

Decided Jan. 8, 1993.

William C. Pericak, Asst. U.S. Atty., Albany, NY (Gary L. Sharpe, U.S. Atty., on the brief), for appellant.

Elliot H. Fuld, New York City (Goldstein, Weinstein, & Fuld, on the brief) for claimant Gonzalez.

Before TIMBERS, ALTIMARI and WALKER, Circuit Judges.

TIMBERS, Circuit Judge:

Appellant, the United States, appeals from a summary judgment entered in the Northern District of New York, David N. Hurd, Magistrate Judge, dismissing a forfeiture action and ordering return of seized currency to claimant because of the government's failure to demonstrate probable cause for seizing the currency pursuant to 21 U.S.C. § 881(a)(6) (1992).

On appeal, the government challenges the summary judgment, claiming that the evidence, when properly viewed in the light most favorable to the government, demonstrates that the seized currency was substantially connected with drug-related activities, and therefore summary judgment was improperly granted.

We reject the government's claim on appeal. We affirm the summary judgment in favor of claimant.

I.

We summarize only those facts and prior proceedings believed necessary to an understanding of the issues raised on appeal.

On August 28, 1988, at approximately 1:00 a.m., two New York State police officers stopped a 1977 Cadillac gypsy cab (a vehicle used to transport people for hire but not registered with a taxi medallion) on the southbound New York State Thruway near Albany. A computer check had revealed that the car's registration was sus-

pended and that its owner was a wanted person. Both the operator of the vehicle, Carlos Coste, and his passenger, Rafael Cabreja, are citizens of the Dominican Republic. Both men had been drinking. Coste was arrested for driving while intoxicated. A search of Coste revealed one half gram of cocaine for which he also was arrested and charged with possession of a controlled substance. A subsequent inventory search of the vehicle uncovered $31,-990 in cash wrapped in elastic bands and stored in plastic bags in the trunk. Coste and Cabreja denied any knowledge of the money. They said it did not belong to them nor to the registered owner of the vehicle, Carlos Martinez. They told the officers that the money belonged to an unidentified black male to whom they had given a ride to Schenectady and who had left it behind. The officers seized the money and forwarded it to the United States Marshal.

On February 2, 1989, the Federal Bureau of Investigation (FBI) commenced administrative forfeiture proceedings. In May 1989, Luis Fernando Gonzales contacted the FBI, claiming that he was the rightful owner of the seized currency. Gonzalez told the FBI that he inadvertently had left the money in the cab the day before the seizure. The matter was referred to the United States Attorney who, on July 25, 1989, commenced a civil forfeiture action pursuant to Rule C of the Supplemental Rules of Admiralty and Marine Claims (Supplemental Rules) and 21 U.S.C. § 881(a)(6) (1992), seeking forfeiture of the money as proceeds traceable to the sale of narcotics. On October 5, 1989, Gonzales filed a claim pursuant to Rule C(b) of the Supplemental Rules. He posted a bond and demanded restitution and the right to defend the action. In accordance with 28 U.S.C. § 636(c)(3) (1988 & Supp.1990) and Fed.R.Civ.P. 73, the parties waived their right to trial before a district judge and consented to trial before a United States Magistrate Judge.

On April 8, 1992, claimant filed a motion for summary judgment. At the hearing on the motion on April 27, 1992, in addition to oral argument, evidence was presented consisting of items found during the investigatory stop and the affidavits of two experienced narcotics investigators, John Smith (a pseudonym to protect his undercover identity) and John Mays.

The affidavits of Smith and Mays reflected their belief that there was a substantial connection between the seized currency and illegal drug trafficking based on the following factors: (1) the large amount of money was wrapped and packaged in a manner consistent with money used in drug trafficking (elastic bands and plastic bags); (2) the amount of money was approximately equal to the 1988 market price for a kilogram of cocaine ($30,000); (3) the money was found in close proximity to cocaine; (4) the seizure occurred on the New York State Thruway, a major drug route between New York City and upstate New York; (5) the money was found in the trunk of a gypsy cab, a vehicle frequently used to transport drugs and cash; (6) the occupants of the vehicle stated that they had been to Schenectady, a center of Dominican drug activity; (7) all involved, including claimant, are Dominican and their activities were consistent with the Dominican drug trafficking culture in the United States; and (8) the incredible story given to the police regarding who owned the money.

The court entered an order on June 2, 1992 granting summary judgment in favor of claimant. It held that the government failed to demonstrate probable cause that the currency was traceable specifically to the sale of narcotics.

On appeal, the government contends that, since the evidence was sufficient to demonstrate that the seized currency was traceable to a narcotics transaction, summary judgment in favor of claimant was improper.

II.

■ It is common ground that a court shall grant summary judgment if there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247 (1986). In our analysis, we examine the evidence in the

light most favorable to the government. *Taggart v. Time, Inc.,* 924 F.2d 43, 45–46 (2 Cir.1991). If there was no genuine factual issue as to whether the seized currency was linked to an exchange involving illegal narcotics, summary judgment was proper.

To establish a prima facie case for forfeiture of drug proceeds, the government must have "probable cause to believe that the property is subject to civil forfeiture." 21 U.S.C. § 881(b)(4) (1992). Accordingly, the government must have reasonable grounds to believe that "a substantial connection exists between the money to be forfeited and the exchange of a controlled substance." *United States v. United States Currency in the Amount of $228,536.00,* 895 F.2d 908, 916 (2 Cir.), *cert. denied,* 495 U.S. 958 (1990). Such grounds must rise above the level of mere suspicion, but need not amount to a preponderance of the evidence. *United States v. Banco Cafetero Panama,* 797 F.2d 1154, 1160 & n. 7 (2 Cir.1986). Probable cause to believe that the property is related to *some* illegal activity, however, does not permit its forfeiture. In *United States v. $38,600.00 in U.S. Currency,* 784 F.2d 694, 698–99 (5 Cir.1986); *United States v. One Hundred and Thirty–Four Thousand, Seven Hundred and Fifty–Two Dollars U.S. Currency, More or Less,* 706 F.Supp. 1075, 1083–84 (S.D.N.Y.1989).

The government contends that its evidence, viewed in the aggregate, demonstrates a substantial connection between the seized currency and the exchange of a controlled substance. The government asserts that the court over-emphasized the government's reliance on a drug courier profile and, as a result, failed to give sufficient weight to other proffered evidence. The government points to six factors to support this contention. We shall consider each in turn.

### (1) *Amount of Cash Seized*

The government contends that the amount of cash found in the trunk of the cab—$31,990—is indicative of drug activity because a large amount of cash is recognized in some circuits as evidence of drug trafficking. *United States v. $67,220.00 in U.S. Currency,* 957 F.2d 280, 285 (6 Cir. 1992); *United States v. $215,300.00 U.S. Currency,* 882 F.2d 417, 419 (9 Cir.1989), *cert. denied,* 497 U.S. 1005 (1990). While we have stated that a person who carries such amounts of cash is "either inordinately carefree with his money" or is "involved in illegal activity," *United States v. $37,780 in U.S. Currency,* 920 F.2d 159, 163 (2 Cir.1990), we have not held that the possession of large amounts of cash is *per se* evidence of drug-related illegal activity. We decline to so hold here.

The possession of large amounts of cash is no more indicative of drug sales than it is of weapon sales, gambling, or a myriad of other illegal activities. At best, the presence of a large amount of cash in the cab supports an inference of illegal activity but does not suggest that the seized currency was tied to the exchange of a controlled substance.

### (2) *Method of Bundling the Cash*

The government also contends that the use of rubber bands and a plastic bag to carry cash also is evidence of drug trafficking. It points out that some courts have recognized such evidence as indicative of drug activity. *United States v. $321,-470.00, U.S. Currency,* 874 F.2d 298, 305 (5 Cir.1989); *United States v. $15,460.00 in U.S. Currency,* 741 F.Supp. 819, 821 (D.Or. 1990). While we recognize that the method of bundling may be probative of drug activity, we emphasize that it is but one factor weighing in favor of a finding of probable cause. In those cases upon which the government relies, there were other factors which, combined with the packaging of the cash, connected the cash to drug activity. In the instant case, there is a notable absence of the additional factors indicative of an exchange of a controlled substance.

### (3) *Coste's Explanation for the Money*

The government also contends that Coste's claim that the money belonged to an unknown black male, being false, is suggestive of drug activity. We have recognized that attempts to conceal ownership

of money support an inference that the money was drug-related. *United States v. 228 Acres of Land and Dwelling Located on Whites Hill Road in Chester, Vt.,* 916 F.2d 808, 813–14 (2 Cir.1990), *cert. denied,* 111 S.Ct. 972 (1991). False statements not accompanied by probative evidence of drug trafficking, while evidencing "consciousness of guilt" generally, *see United States v. Marin,* 669 F.2d 73, 84 (2 Cir.1982), do not themselves permit an inference of drug trafficking. Assuming Coste's statement was false, absent probative evidence of a link to drug trafficking, only consciousness of unspecified guilt may be inferred from his statement to the police.

### (4) *Coste's Itinerary and Mode of Travel*

The government also contends that the extensive parallels between Coste's travel itinerary and that of a Dominican drug courier bolster a finding of probable cause. In particular, the government points to the community of Dominican drug dealers in Schenectady and the frequent use of the New York State Thruway and gypsy cabs to transport money and drugs between Schenectady and New York City. Although "profile" factors have been used to support a finding of probable cause, *United States v. $64,765.00 in U.S. Currency,* 786 F.Supp. 906, 913 (D.Or.1991) (finding of probable cause was based, in part, on "factors consistent with the modus operandi employed by drug/money couriers."); *United States v. $87,375 in U.S. Currency,* 727 F.Supp. 155, 161 (D.N.J.1989) (fact that money was being transported along well known drug corridor was probative of probable cause), they "are of little value in the forfeiture context without other persuasive evidence establishing the requisite substantial connection" between the money and drug activity. *United States v. $80,760.00 in U.S. Currency,* 781 F.Supp. 462, 475 (N.D.Tex.1991). In those cases upon which the government relies, there also was evidence linking the seized currency to narcotics. In *$64,765 in U.S. Currency, supra,* 786 F.Supp. at 910, visible traces of drugs were found in the car near where the money was located, indicating that the car had been used to transport drugs. In *$87,375 in U.S. Currency, supra,* 727 F.Supp.

at 160, the Customs Service narcotics-detecting dog alerted to the drawer in which the currency was hidden. By contrast, in the instant case there is neither evidence suggesting that the cab was used to transport drugs nor evidence that the money was connected in any way with narcotics. The fact that Coste and Cabreja are Dominican and were driving on the New York Thruway in a gypsy cab containing cash is of little value where, as here, there is no other evidence linking the participants and the claimant to drug-related activity.

### (5) *Coste's Possession of Cocaine*

The government also contends that Coste's possession of one half gram of cocaine at the time the car was seized demonstrates his access to drug dealers. *$321,470, U.S. Currency, supra,* 874 F.2d at 305 (two grams of cocaine "indicates that [participant] ... had access to drug dealers—*a small thing* but one not without relevance.") *(emphasis added)*. While relevant to infer personal use of drugs and access to drug dealers, such a small amount of cocaine as one half gram does not provide a strong inference that Coste was engaged in drug trafficking. Moreover, there is no evidence linking the one-half gram of cocaine found on Coste and the large sum of money found in the cab.

### (6) *Investigators' Affidavits*

The government also contends that the affidavits of Inspectors Smith and Mays support a finding of probable cause. The affidavits represent the conclusions of two experienced investigators that the seized currency was connected with the exchange of a controlled substance. To the extent that these conclusions are admissible in view of our recent holding in *Hygh v. Jacobs,* 961 F.2d 359 (2 Cir.1992) (exclusion of expert testimony that expressed a legal conclusion), they add nothing more to support a finding of probable cause. Indeed, the investigators merely speculate that the money is related to narcotics. Such "mere suspicion" is insufficient to create an issue of fact to defeat claimant's motion for summary judgment. *Banco Cafetero, supra,* 797 F.2d at 1160.

### III.

Viewing these factors in the light most favorable to the government, we conclude that, taken together, the inferences establish no more than a suspicion that the money was connected with the exchange of narcotics. Despite the government's "profile" strategy, the court correctly emphasized that neither the vehicle's occupants nor the claimant had ever been charged or convicted of any drug-related crimes; indeed, none involved ever had been linked to any criminal activity. *Cf. $37,780 in U.S. Currency, supra,* 920 F.2d at 163–64 (forfeiture was appropriate where claimant was extensively involved in drug activities); *United States v. $2,500 in U.S. Currency,* 689 F.2d 10, 16 (2 Cir.1982) (forfeiture was appropriate where claimant was caught in the act of transacting drugs and previously had sold heroin to DEA agents), *cert. denied,* 465 U.S. 1099 (1984). The government also has not shown that the gypsy cab ever had been linked to the exchange of controlled substances. Other than the one half gram of cocaine found on Coste, there was no evidence of drug residue or paraphernalia in the car. *$38,600 in U.S. Currency, supra,* 784 F.2d at 696, 698 (no probable cause where money found in car with smell of marijuana emanating from it and paraphernalia found near money); *$134,752 in U.S. Currency, supra,* 706 F.Supp. at 1083–84 (no probable cause where empty vials found near money and occupants of car linked to organized crime).

In view of these undisputed facts, we hold that the inferences relied on by the government merely give rise to a suspicion that the seized currency was linked to drug trafficking and are insufficient to satisfy the government's threshold burden of establishing probable cause in a forfeiture action.

██ Forfeiture is a "harsh and oppressive procedure" which is not favored by the courts. *United States v. One 1976 Mercedes Benz 280S,* 618 F.2d 453, 454 (7 Cir. 1980); *United States v. One 1981 Cadillac Eldorado,* 535 F.Supp. 65, 67 (N.D.Ill.1982). Since "there is little to discourage federal agents from seizing property illegally and then seeking evidence of probable cause," courts must guard against the abuse of forfeiture in the government's zeal to apprehend and prosecute drug dealers. George C. Pratt & William B. Peterson, *Civil Forfeiture In The Second Circuit,* 65 St. John's L.Rev. 653, 668–69 (1991). To support forfeiture of the money in the instant case, the government suggests a drug courier profile which indicates that, whenever two Dominicans are driving a cab on the New York State Thruway between Schenactady and New York City, any money found in the trunk wrapped and bundled in plastic bags must be connected with the illegal sale of drugs. This profile, in our view, is unrealistic in that it describes a "large category of presumably innocent travelers, who would be subject to virtually random seizures." *Reid v. Georgia,* 448 U.S. 438, 441 (1980) (per curiam). Indeed, the suspicions suggested by the government are "simply too slender a reed to support the seizure in this case." *Id.; see also* Pratt and Peterson, *supra,* at 666 ("Cases involving forfeiture of currency often present facts evincing only a nebulous connection between the currency and the alleged illegal activity."). While we recognize the formidable task faced by the government in its war on drugs, we decline to condone the abuse of civil forfeiture as a means to winning that war.

### IV.

To summarize:

We hold that the court properly dismissed the forfeiture action because of the government's failure to demonstrate probable cause for seizing the $31,990. There being no genuine issue of material fact and claimant being entitled to judgment as a matter of law, summary judgment was proper.

Affirmed.