UNITED STATES of America, Plaintiff,

v.

$8,880 IN U.S. CURRENCY, Defendant.

No. 96–CV–6003L.

United States District Court,
W.D. New York.

Nov. 15, 1996.

Anne Van Graafeiland, Assistant U.S. Attorney, Rochester, NY, for plaintiff.

Dudley M. Bertram, Rochester, NY, for defendant.

## DECISION AND ORDER

LARIMER, Chief Judge.

The United States commenced this action pursuant to 21 U.S.C. § 881(a)(6) seeking the forfeiture of approximately $8,880.00 in U.S.

currency. The money was seized from Noel McDermoth ("McDermoth"), the claimant in this action, on June 10, 1995 at the Greater Rochester International Airport by officers of the Monroe County Sheriff's Department. The officers obtained the money after approaching McDermoth and asking him some questions about his trip and his identification. The initial contact was prompted by the fact that McDermoth and his travel companion Kinyeild Thomas ("Thomas") had just purchased two round-trip tickets to New York City with cash, had refused to produce identification to the ticket agent, and checked no luggage. After this initial discussion at the gate area, the officers requested McDermoth to accompany them to a security office in the airport for further investigation. At the office McDermoth was asked to empty his pockets. He did so and the officers seized $8,880 in cash on the belief that it was traceable to narcotics transactions.

Currently pending before me are McDermoth's motion for summary judgment or, in the alternative, to suppress evidence obtained at the time of the seizure, and the Government's cross-motion for summary judgment.

For the reasons that follow, the Government's motion for summary judgment is granted and McDermoth's motion is denied in its entirety.

## DISCUSSION

### I. *Summary Judgment Standard*

Fed.R.Civ.P. 56 provides that a motion for summary judgment shall be granted if the pleadings and supplemental evidentiary materials "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). Thus, in the forfeiture context, "[i]f there [is] no genuine factual issue as to whether the seized currency was linked to an exchange involving illegal nar-

cotics, summary judgment [is] proper." *United States v. $31,990 in U.S. Currency*, 982 F.2d 851, 854 (2d Cir.1993).

### II. *Forfeiture Under 21 U.S.C. § 881(a)(6)*

Pursuant to 21 U.S.C. § 881(d), "proceedings for summary and judicial forfeiture and condemnation of property shall follow the provisions for forfeiture that are set forth in the customs laws. These provisions are found at 19 U.S.C. §§ 1595a to 1615. Section 1615 provides that in a civil forfeiture action the claimant shall bear the burden of proof 'Provided, That probable cause shall be first shown for the institution of such suit or action'." *United States v. $37,780 in U.S. Currency*, 920 F.2d 159, 162 (2d Cir.1990) (quoting 19 U.S.C. § 1615). Thus, although the burden ultimately falls on the claimant, the Government bears the "initial burden of establishing probable cause for instituting the forfeiture proceeding ..., that is, 'probable cause to believe that the properties are the fruits of illegal drug activity.'" *United States v. Daccarett*, 6 F.3d 37, 55 (2d Cir. 1993) (citations omitted), *certs. denied*, 510 U.S. 1191, 114 S.Ct. 1294, 127 L.Ed.2d 648, 510 U.S. 1192, 114 S.Ct. 1295, 127 L.Ed.2d 648, and —— U.S. ——, 114 S.Ct. 1538, 128 L.Ed.2d 190 (1994).

In this case, the Government moves for summary judgment on the grounds that the present record clearly establishes probable cause for forfeiture of the money. McDermoth moves for summary judgment on the grounds that it does not.

### A. *Probable Cause*

To establish probable cause for the forfeiture, the Government must show that it has "reasonable grounds to believe that [the] property is subject to forfeiture. These grounds must rise above the level of mere suspicion but need not amount to what has been termed 'prima facie proof.' The Government must have probable cause to connect the property with narcotics activity, but need not link the property to a particular transaction." *United States v. Banco Cafetero Panama*, 797 F.2d 1154, 1160 (2d Cir. 1986) (citations and footnote omitted). "There need not be a substantial connection

between the drug activities and the property in question, but only a nexus between them." *Daccarett,* 6 F.3d at 55 (citing *United States v. 785 St. Nicholas Ave.,* 983 F.2d 396, 403 (2d Cir.), *cert. denied,* 508 U.S. 913, 113 S.Ct. 2349, 124 L.Ed.2d 258 (1993). The Government may prove probable cause by circumstantial evidence. *Daccarett,* 6 F.3d at 56.

■ Furthermore, the Government need not demonstrate probable cause until the forfeiture trial or, as in this case, motion for summary judgment. *Id.* at 55. It may rely on evidence uncovered after the seizure. *$37,780,* 920 F.2d at 163. As the Second Circuit has noted, " '[o]nce a forfeiture proceeding is brought, if further evidence is legally obtained to justify the government's belief, there is no persuasive reason to bar its use.' " *Id.* (quoting *United States v. Premises and Real Property at 4492 S. Livonia Road,* 889 F.2d 1258, 1268 (2d Cir.1989)).

■ Once the Government has made a showing of probable cause, the burden shifts to the claimant to show, by a preponderance of the evidence, that the defendant property was not in fact used unlawfully and hence is not subject to forfeiture. *United States v. All Assets of G.P.S. Automotive Corp.,* 66 F.3d 483, 487 (2d Cir.1995) (citing *Daccarett,* 6 F.3d at 57); *see also Livonia Road,* 889 F.2d at 1267 ("claimant must prove either that the property was not used unlawfully ... or that the illegal use was without the claimant's knowledge or consent").

### B. *Unlawful Search and Seizure*

In this case, McDermoth also moves to suppress certain evidence obtained by the officers at the airport when they seized the $8,880. McDermoth contends that he was detained and seized in violation of the Fourth Amendment and that the fruits of that seizure should be suppressed and must not be considered by the Court in determining whether the money should be forfeited. Specifically, McDermoth seeks to suppress both the written confession of his companion, Thomas, admitting that the money was the proceeds of drug sales and the evidence that dogs trained to detect narcotics "alerted" on the money.

■ Of course, if the initial detention or seizure was unlawful under the Fourth Amendment, evidence obtained by virtue of that seizure must be suppressed. *$37,780,* 920 F.2d at 163.

However, the "res" itself is not subject to suppression in a forfeiture proceeding in the sense that the property itself becomes immune from forfeiture because it was obtained in violation of the Fourth Amendment. *Id.; see also I.N.S. v. Lopez–Mendoza,* 468 U.S. 1032, 1039–40, 104 S.Ct. 3479, 3483–84, 82 L.Ed.2d 778 (1984).

Therefore, even if the initial seizure was unlawful, forfeiture is still appropriate if the Government can meet its burden without using either Thomas's confession or the evidence relating to the canine alert.

### III. *My Findings*

■ In this case, I find that probable cause for the forfeiture exists without considering any evidence obtained during the alleged "seizure." Accordingly, I do not need to resolve the legality, *vel non,* of the initial seizure of the money.

As noted, to establish probable cause "the government must have 'reasonable grounds' to believe the property is subject to forfeiture, and these grounds must rise above the level of 'mere suspicion.' " *Daccarett,* 6 F.3d at 55. More specifically, the government must have reasonable grounds to believe that a nexus exists between drug activities and the property in question. *Id.*

■ The Government points to a number of factors suggesting that probable cause exists. Initially, Monroe County Sheriff's Officers were telephoned by a Delta ticket agent, alerting them to what the agent described as a suspicious sale. In particular, the agent told the officers that two round-trip tickets to New York City were purchased with large amounts of cash, in the names Michael and Tasha Thomas, but that the purchasers would not provide any identification. The agent further stated that the passengers checked no luggage (the return flight was the next afternoon).

Based upon this information and the agent's description of the couple, an officer went to the gate and approached a man matching the description. The officer asked to see his ticket (which was in the name Michael Thomas) and then asked to see some identification. McDermoth initially said he had none but then produced an identification card in the name Noel McDermoth. When asked why his ticket was in the name Michael Thomas, McDermoth replied "it's just a name I use when I'm in a hurry."

At this time, McDermoth was alone. When asked by the officer about his companion, McDermoth said she was in the bathroom. When she exited the bathroom the officer approached her and asked for some identification and then for her plane ticket. Her identification, in the name "Kinyeild Thomas," did not match the name on the ticket, "Tasha Thomas." When asked why, she stated that she was using a relative's ticket.

Up to this point, none of the information obtained by the officer is subject to a Fourth Amendment analysis because the dialogue between the officer, McDermoth and Thomas does not constitute a "seizure." *See Florida v. Bostick,* 501 U.S. 429, 434, 111 S.Ct. 2382, 2386, 115 L.Ed.2d 389 (1991) ("mere police questioning does not constitute a seizure"). "[L]aw enforcement officers do not violate the Fourth Amendment by merely approaching an individual on the street or in another public place, by asking him if he is willing to answer some questions, by putting questions to him if the person is willing to listen, or by offering in evidence in a criminal prosecution his voluntary answers to such questions." *Id.*[1]

This evidence, viewed alone and without considering any evidence obtained by the officers thereafter, shows that McDermoth was engaged in suspicious behavior. The purchase of airplane tickets with large amounts of cash, the absence of luggage, the refusal to produce any identification to the ticket agent, and the false identities of these two individuals all suggest that a nexus exists

between drug activities and the $8,880 in cash.

However, there is significantly more. The Government also has produced substantial evidence of McDermoth's involvement in drug transactions both before and after this June 10, 1995 incident.

In February 1994, McDermoth's apartment in Rochester was searched pursuant to a warrant obtained by the Rochester Police Department. Both McDermoth and Thomas were on the premises at the time. Officers found approximately 94 bags of cocaine and 8 ounces of marijuana, all packaged for sale.

Additionally, the Government has produced evidence that McDermoth was arrested in Florida nineteen times between 1989 and 1991. Twelve of these arrests were felony arrests and thirteen were drug related. He was convicted in Florida twice for felony possession of cocaine: September 18, 1989, and March 14, 1991.

Moreover, McDermoth was arrested in Rochester on February 22, 1996, for "Criminal Sale of Marihuana 4th", after selling marijuana to an undercover police officer.

Finally, the Government has produced evidence demonstrating that McDermoth had no legitimate sources of income in the years prior to June 1995. McDermoth was deposed in October 1995, as part of a related case brought by McDermoth against the Monroe County Sheriff's Department. In that deposition, McDermoth first stated that he had been unemployed for the past six or seven years. He then said that he was involved as a producer and promoter in the music business. However, he was unable to identify the name of a company or business entity he worked with or for, its office location, or the names of any musicians he had produced or promoted. Nor could he identify any businesses in which he had ever held any interest as owner, partner, shareholder or sole proprietor.

Additionally, McDermoth stated (and the Government independently confirmed) that

---

1. At this point, at the officer's request, McDermoth and Thomas accompanied him to two separate rooms in the airport security office. What

happened next, and whether or not it violated McDermoth's Fourth Amendment rights, need not be analyzed.

he had not filed state or federal tax returns for the past 10 years.

Finally, in answers to interrogatories in this litigation, McDermoth stated that he has no accounts in any bank or credit union.

This evidence suggests that McDermoth had no legitimate, legal source of income prior to June 1995 from which he could have saved nearly $9,000 in cash.

All of this evidence, when considered in the aggregate, sufficiently demonstrates a nexus between the money and the exchange of a controlled substance.

Although the Second Circuit has declined to hold that possession of large amounts of cash is per se evidence of involvement in illegal drug-related activity, *$31,990*, 982 F.2d at 854, it has nevertheless noted that "a person who carries such amounts of cash is 'either inordinately carefree with his money' or is 'involved in illegal activity' ...," *id.* (quoting *$37,780*, 920 F.2d at 163), and that the possession of a large amount of cash raises an inference of illegal—although not necessarily drug-related—activity. *$31,990*, 982 F.2d at 854. Here, the inference of illegal activity raised by McDermoth's possession of a large amount of cash must be considered along with the other evidence, including his prior and subsequent arrests and convictions for the drug-related offenses. Similarly, although "profile" factors, such as the cash purchase of airline tickets to New York City, are of little value when considered in isolation, they are probative when viewed along with other evidence of narcotics activity. *See $31,990*, 982 F.2d at 855. In this case, the cash purchase of a tickets to New York City must be considered along with McDermoth's other criminal activity and all the other factors suggesting a nexus between the money and drug transactions.

When all these factors are viewed together, there is ample basis upon which to conclude that the $8,880 is connected to the sale of controlled substances, and that the Government has therefore established probable cause for the seizure. *Cf. $37,780*, 920 F.2d

at 163–64 (noting that evidence of claimant's extensive involvement in drug activities was a relevant factor in determining probable cause).

 Because the Government has satisfied its burden of establishing probable cause, "19 U.S.C. § 1615 places on McDermoth 'the ultimate burden of proving that the factual predicates for forfeiture have not been met.'" *United States v. One Parcel of Property Located at 15 Black Ledge Drive*, 897 F.2d 97, 101 (2d Cir.1990) (quoting *Banco Cafetero Panama*, 797 F.2d at 1160). McDermoth has failed to carry this burden.

McDermoth has offered no evidence to rebut the finding of probable cause. He simply asserts in an affidavit that the money was "life savings," with no "connection with drugs." However, he offers no proof to substantiate this conclusory assertion.[2]

On a motion for summary judgment, the party against whom summary judgment is being sought must do more than rely on conclusory assertions. *See Meiri v. Dacon*, 759 F.2d 989, 998 (2d Cir.), *cert. denied*, 474 U.S. 829, 106 S.Ct. 91, 88 L.Ed.2d 74 (1985) (conclusory allegations of discrimination are insufficient to satisfy Rule 56(e)). Moreover, where a non-moving party bears the burden of proof at trial, "Rule 56 permits the moving party to point to an absence of evidence to support an essential element of the nonmoving party's claim." *Bay v. Times Mirror Magazines, Inc.*, 936 F.2d 112, 116 (2d Cir. 1991). Here, apart from McDermoth's conclusory statement, there is no evidence to support his claim that the money is not substantially related to the sale of a controlled substance.

## CONCLUSION

For the reasons set forth above, the Government's motion for summary judgment is granted. The claimant's motion to suppress

---

2. Although McDermoth provided some inconsistent and confusing answers to questions regarding his criminal history during discovery in this and the related case against the County, he ultimately conceded that "it would be futile to deny his arrests and/or convictions in the United States" because the Government had already obtained a copy of his "criminal record."

is denied as moot and claimant's motion for summary judgment is denied.

IT IS SO ORDERED.