12-2210-cv
*United States v. Pellegrino*

# In the
# United States Court of Appeals
## For the Second Circuit

————

No. 12-2210-cv

UNITED STATES OF AMERICA,
*Plaintiff-Appellee,*

*v.*

THE SUM OF $185,336.07 UNITED STATES
CURRENCY SEIZED FROM CITIZEN'S BANK
ACCOUNT L7N01967,
*Defendant,*

DOMINIC PELLEGRINO,
*Claimant-Appellant.*

————

Appeal from the United States District Court
for the Western District of New York.
No. 08 CV 6287 — David G. Larimer, *Judge.*

————

ARGUED: JUNE 19, 2013
DECIDED: SEPTEMBER 25, 2013

————

Before: CALABRESI, CABRANES, and PARKER, *Circuit Judges*.

————

In this appeal from the United States District Court for the Western District of New York (David G. Larimer, *Judge*), we consider whether the District Court erred in concluding that claimant-appellant Dominic Pellegrino's funds were subject to forfeiture following his state-court conviction for the sale of prescription drugs.

Although Pellegrino's arguments on appeal are without merit, we nonetheless act *nostra sponte* to hold that it was plain error not to apply the civil forfeiture standards established by the Civil Asset Forfeiture Reform Act of 2000.

Accordingly, we **VACATE** the judgment of the District Court and **REMAND** the cause for further proceedings consistent with this opinion.

————

DONALD M. THOMPSON, Easton Thompson Kasperek Shiffrin, LLP, Rochester, NY, *for Dominic Pellegrino*.

GRACE M. CARDUCCI, Assistant United States Attorney, *for* William J. Hochul, Jr., United States Attorney for the Western District of New York, Rochester, NY, *for the United States of America*.

————

José A. Cabranes, *Circuit Judge*:

In this appeal, we must decide whether to recognize, *nostra sponte*, "plain error"[1] in the legal standards applied by the District Court in concluding that certain funds of the appellant seized by the government were the product of illegal activities and therefore subject to forfeiture.

Our review of the record leads us to conclude that, although the several claims of error asserted by the appellant are without merit, the District Court's application of legal standards antedating adoption of the Civil Asset Forfeiture Reform Act of 2000 ("CAFRA"), Pub. L. No. 106-185, 114 Stat. 202 (codified principally at 18 U.S.C. § 983) constituted plain error and affected appellant's substantial rights. Consequently, we vacate the judgment of the United States District Court for the Western District of New York (David G. Larimer, *Judge*) and remand the cause for further proceedings consistent with this opinion.

## I. BACKGROUND

On April 27, 2007, Dominic Pellegrino ("Pellegrino" or "appellant"), now a 66-year-old retired deputy sheriff, was caught selling prescription drugs illegally to a confidential informant. Based on this information, law enforcement obtained a search warrant for Pellegrino's residence, where, upon executing the warrant on May 3, 2007, they found additional prescription pills—some of which contained controlled substances—and empty prescription bottles. Pellegrino was arrested on May 16, 2007 and

---

[1] The concept of "plain error" review permits us to "notice" errors or defects affecting substantial rights even though they were not brought to the attention of the district court. *See* Fed. R. Evid. 103(e); Fed. R. Crim. P. 52(b). For further discussion see note 6 and accompanying text, *post*.

charged in state court with having violated New York's narcotics laws. On July 11, 2008, he pleaded guilty in state court to one count of criminal possession of a controlled substance in the seventh degree, in violation of N.Y. Penal Law § 220.03.[2] Pellegrino was sentenced on September 11, 2008 to a "conditional discharge."[3]

During the search of Pellegrino's home, law enforcement also found bank statements identifying Pellegrino as the owner of a Citizens Bank brokerage account. The ensuing investigation revealed that between May 25, 2004 and April 5, 2007—the three-year period immediately preceding his arrest—Pellegrino deposited $169,000 and transferred $17,000 into the brokerage account. The documents Pellegrino had completed to open the account, however, stated that his sole source of income during this period was a Social Security disability payment of $12,000 per year. He also had not filed federal tax returns for the six-year period from 2001 through 2006. On the basis of this information, on June 20, 2007, law enforcement seized the brokerage account, which had a balance at that time of $185,336.07.

On June 30, 2008, the federal government (the "government") commenced the instant civil forfeiture action in the District Court pursuant to 21 U.S.C. § 881(a)(6) ("§ 881(a)(6)"),[4] seeking forfeiture

---

[2] N.Y. Penal Law § 220.03 provides: "A person is guilty of criminal possession of a controlled substance in the seventh degree when he or she knowingly and unlawfully possesses a controlled substance . . . ."

[3] A sentence of "conditional discharge" entitles the defendant to be released "with respect to the conviction for which the sentence is imposed without imprisonment or probation supervision but subject, during the period of conditional discharge, to such conditions as the court may determine." N.Y. Penal Law § 65.05.

[4] 21 U.S.C. § 881(a)(6) provides:

> The following shall be subject to forfeiture to the United States and no property right shall exist in them:

of the assets held in the brokerage account.  The government alleged in its complaint and supporting affidavit that the entire sum of $185,336.07 constituted proceeds of illegal drug sales.  That same day the District Court issued a warrant of arrest *in rem*.  On October 23, 2009, Pellegrino filed a verified claim requesting that the currency be returned to him because it was the product of lawful activity.  On August 1, 2011, following the completion of discovery, the government moved for summary judgment in the civil forfeiture proceeding, which the District Court granted in a decision and order dated May 2, 2012.  *See United States v. Sum of $185,336.07 U.S. Currency Seized from Citizen's Bank Account L7N-01967*, 858 F. Supp. 2d 246, 250 (W.D.N.Y. 2012) ("*Sum of $185,336.07*").

This appeal followed.

## II. DISCUSSION

"We review an order granting summary judgment *de novo*, drawing all factual inferences in favor of the non-moving party." *Viacom Int'l, Inc. v. YouTube, Inc.*, 676 F.3d 19, 30 (2d Cir. 2012). Summary judgment is required if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see also Lyons v. Lancer Ins. Co.*, 681 F.3d 50, 56 (2d Cir. 2012).

----

. . . .

(6) All moneys, negotiable instruments, securities, or other things of value furnished or intended to be furnished by any person in exchange for a controlled substance or listed chemical in violation of this subchapter, all proceeds traceable to such an exchange, and all moneys, negotiable instruments, and securities used or intended to be used to facilitate any violation of this subchapter.

**A.**

On appeal, Pellegrino raises three arguments: (1) the District Court "abused its discretion" by failing to "accommodate" his invocation of the Fifth Amendment; (2) the District Court improperly "sanctioned" him for discovery violations by granting summary judgment; and (3) the District Court's decision allowing the seizure of the $185,336.07 violated the Eighth Amendment's ban on disproportionate punishment. We do not find these arguments persuasive, but we briefly discuss them before turning to the question of the correct standard for civil forfeiture proceedings. *See* Part B, *post*.

**1.**

Pellegrino's first argument is that the District Court "abused its discretion" by failing to "accommodate" his invocation of the Fifth Amendment right to remain silent. *See In re Sims*, 534 F.3d 117, 132 (2d Cir. 2008) (explaining the term of art "abuse of discretion" as a ruling based on "an erroneous view of the law or on a clearly erroneous assessment of the evidence, or . . . a decision that cannot be located within the range of permissible decisions." (internal quotation marks and alteration omitted)). Pellegrino did not, however, invoke his Fifth Amendment privilege until the eve of his deposition, well over three years after discovery had begun. And in those proceeding years, Pellegrino refused to respond to the government's interrogatories, document requests, and requests for admission, but never by invoking his Fifth Amendment right to silence. It was not abuse of discretion for the district court,

suspicious of Pellegrino's gamesmanship, to discredit unauthenticated documents that Pellegrino first produced in opposition to summary judgment.

Moreover, Pellegrino's reliance on *United States v. Certain Real Property & Premises Known As: 4003-4005 5th Ave., Brooklyn, NY*, 55 F.3d 78 (2d Cir. 1995), is misplaced because it requires district courts to "make special efforts to accommodate" a claimaint, but only "upon [his] timely motion." *Id.* at 83 (internal quotation mark omitted). A district court is not required to review discovery materials—which can be voluminous, if not vast—in search of arguable privileges that have not been so much as identified by a litigant. At no point in the proceedings before Judge Larimer, did Pellegrino make any motion—much less a "timely motion" based on articulable grounds of Fifth Amendment privilege—for any such "accommodation." Indeed, Pellegrino did not bring to the District Court's attention his invocation of the Fifth Amendment until the filing of his opposition to the government's motion for summary judgment, notwithstanding a conference with the magistrate judge on March 1, 2011 to discuss the status of discovery. Accordingly, in the absence of any authority requiring district courts to grant such an "accommodation" *sua sponte*, we conclude that Pellegrino's argument is without merit.

**2.**

Pellegrino next argues that, by granting summary judgment to the government, the District Court improperly "sanctioned" him for failing to comply with discovery requests and for invoking the Fifth

Amendment. Yet the Court granted summary judgment, not as a penalty for a violation of the rules governing discovery, *see Black's Law Dictionary* 1458 (9th ed. 2009) (defining a "sanction" as "[a] penalty or coercive measure that results from a failure to comply with a law, rule, or order"), but in response to the government's motion pursuant to Rule 56 of the Federal Rules of Civil Procedure.[5] The Court's holding was based on Pellegrino's supposed failure to demonstrate any genuine dispute of material fact and the resulting conclusion that the movant was entitled to judgment as a matter of law. *Sum of $185,336.07*, 858 F. Supp. 2d at 247. This decision was not a "sanction."

**3.**

Pellegrino's final argument on appeal is that the District Court's decision, which permitted the seizure of the $185,336.07 in illegal drug sale proceeds under 21 U.S.C. § 881(a)(6), violated the Eighth Amendment's ban on disproportionate punishment. We have not spoken directly on the question of whether the Eighth Amendment's prohibition on disproportionate punishment applies to § 881(a)(6); we do so now, and hold that it does not. In *Austin v. United States*, 509 U.S. 602 (1993), the Supreme Court held that, notwithstanding statutory language that "no property right . . . exist[s]" in the property described under 21 U.S.C. § 881(a)(1)-(11), the Excessive Fines Clause of the Eighth Amendment applies to

---

[5] Rule 56 provides, in relevant part, that a court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

forfeitures of conveyances and real estate under 21 U.S.C. § 881(a)(4) and 21 U.S.C. § 881(a)(7). *Id.* at 622. In reaching this conclusion, the Court stated that "Congress understood those provisions as serving to deter and to punish" rather than "serv[ing] solely a remedial purpose." *Id.*

The current case, however, deals with subsection (a)(6)—which concerns proceeds from illicit drug sales. *See* note 4, *ante*. All of our sister courts of appeal that have considered this provision have concluded that the forfeiture of "guilty property," such as illicit drug proceeds, "has been traditionally regarded as non-punitive" as to which the Eighth Amendment's restrictions on punishment do not apply. *United States v. Real Prop. Located at 22 Santa Barbara Drive*, 264 F.3d 860, 874-75 (9th Cir. 2001) (internal quotation marks omitted); *see also United States v. One Parcel of Real Prop. Described as Lot 41, Berryhill Farm Estates*, 128 F.3d 1386, 1395 (10th Cir. 1997); *Smith v. United States*, 76 F.3d 879, 882-83 (7th Cir. 1996); *United States v. Buchanan* 70 F.3d 818, 830 n.12 (5th Cir. 1995); *cf. United States v. Alexander*, 32 F.3d 1231, 1236 (8th Cir. 1994). In so doing, these courts have viewed the forfeiture of drug proceeds as categorically distinct from the forfeiture of conveyances and real estate. *See United States v. Tilley*, 18 F.3d 295, 300 (5th Cir. 1994) ("[T]he forfeitures of conveyances and real estate have no correlation to, or proportionality with, the costs incurred by the government and society because of the large and unpredictable variances in the values of real estate and conveyances in comparison to the harm inflicted upon government and society by the criminal act," whereas "the forfeiture of drug proceeds will always be directly proportional to the amount of drugs sold. The more drugs sold, the more

proceeds that will be forfeited.").  We agree with this view and hold that the Eighth Amendment does not apply to forfeitures under 21 U.S.C. § 881(a)(6).

The District Court found that all of the seized money constituted proceeds of illegal drug sales.  *See Sum of $185,336.07*, 858 F. Supp. 2d at 250.  Accordingly, "no property right [ ] exist[s] in them," 21 U.S.C. § 881(a); *see also Adames v. United States*, 171 F.3d 728, 733 (2d Cir. 1999), and therefore seizure of the unlawfully obtained money cannot violate the Eighth Amendment.  We hold, therefore, that Pellegrino's Eighth Amendment argument is meritless.

**B.**

Our review of the District Court's entry of summary judgment reveals that the Court applied an outdated standard for civil forfeiture proceedings, thereby committing a significant legal error. Although Pellegrino did not raise this argument in the District Court or on appeal, "[t]he Court has the power to notice a 'plain error' though it is not assigned or specified," *Silber v. United States*, 370 U.S. 717, 718 (1962).[6]  "['Plain error'] is a doctrine that should only be

---

[6] As a general rule, "a federal appellate court does not consider an issue not passed upon below." *Singleton v. Wulff*, 428 U.S. 106, 121 (1976).  But as Justice Black, writing for the Court, recognized more than seventy years ago, "[t]here may always be exceptional cases or particular circumstances which will prompt a reviewing or appellate court, where injustice might otherwise result, to consider questions of law which were neither pressed nor passed upon by the court or administrative agency below." *Hormel v. Helvering*, 312 U.S. 552, 557 (1941).  More recently, the Supreme Court reaffirmed this approach, stating that whether to deviate from the waiver rule is "a matter 'left primarily to the discretion of the courts of appeals, to be exercised on the facts of individual cases.'"

invoked with extreme caution in the civil context." *United States v. Carson*, 52 F.3d 1173, 1188 (2d Cir. 1995). Under this exacting standard,

> an appellate court may, in its discretion, correct an error not raised at trial only where the appellant demonstrates that (1) there is an error; (2) the error is clear or obvious, rather than subject to reasonable dispute; (3) the error affected the appellant's substantial rights, which in the ordinary case means it affected the outcome of the district court proceedings; and (4) the error seriously affect[s] the fairness, integrity or public reputation of judicial proceedings.

*United States v. Marcus*, 130 S. Ct. 2159, 2164 (2010) (internal quotation marks and citations omitted). These factors are present here and warrant a remand.

### 1.

Prior to the enactment of CAFRA, civil forfeiture proceedings were analyzed under a two-step burden-shifting framework. Under the first step, "the initial burden in judicial forfeiture proceedings was placed on the government to establish probable cause for forfeiture." *United States v. $557,933.89, More or Less, in U.S. Funds*, 287 F.3d 66, 77 (2d Cir. 2002) (describing and applying the pre-CAFRA framework). In the case of a bank account, the government was required to show probable cause that "the funds represent proceeds traceable to a drug transaction." *United States v. All Right, Title & Interest in Real Prop. & Appurtenances Thereto Known as 785 St.*

---

*Exxon Shipping Co. v. Baker*, 554 U.S. 471, 487 (2008) (citing *Singleton*, 428 U.S. at 121)). In light of the errors discussed below, *see* Part B(2)-(3), *post*, we exercise such discretion here.

*Nicholas Ave. & 789 St. Nicholas Ave.*, 983 F.2d 396, 403 (2d Cir. 1993). The government was *not* required, as part of its initial burden, to demonstrate "a substantial connection between the drug activities and the property in question, but only a nexus between them." *Id.* Once the government met its initial burden, the ultimate burden of proof then shifted to the claimant "to show by a preponderance of the evidence that the property was not subject to forfeiture." *United States v. Parcel of Prop.*, 337 F.3d 225, 227 (2d Cir. 2003).

In response to criticism of the broad scope of the government's civil forfeiture authority, *see United States v. Davis*, 648 F.3d 84, 92-93 (2d Cir. 2011), Congress in 2000 enacted CAFRA, which "consolidated and dramatically overhauled the procedures for civil judicial forfeiture proceedings." *United States v. $557,933.89, More or Less, in U.S. Funds*, 287 F.3d at 76 n.5. Among the most notable changes was the heightened standard by which the government must prove that the property is subject to forfeiture. Under CAFRA, the burden of proof now rests solely with the government to show by a preponderance of the evidence—rather than mere probable cause—that the property is subject to forfeiture. *See von Hofe v. United States*, 492 F.3d 175, 179 (2d Cir. 2007). CAFRA also replaced the existing "'nexus' standard" with the more rigorous "substantial connection" test, which we had specifically declined to adopt in the pre-CAFRA era. *See United States v. Daccarett*, 6 F.3d 37, 55-56 (2d Cir. 1993); *see also* 18 U.S.C. § 983(c)(3) (effectively abrogating *Daccarett*).

**2.**

Although the District Court here twice stated that it was applying a "preponderance of the evidence" standard, *Sum of $185,336.07*, 858 F. Supp. 2d at 247, 250, in substance it applied the

pre-CAFRA framework. The Court stated at the outset of its decision:

> In proving entitlement to civil forfeiture, the Government must demonstrate, by a preponderance of the evidence, that the defendant assets are forfeitable. *See Fischl v. Armitage*, 128 F.3d 50, 55 (2d Cir. 1997). That is, "the Government must show that it has reasonable grounds to believe that [the] property is subject to forfeiture. These grounds must rise above the level of mere suspicion but need not amount to what has been termed 'prima facie proof.'" *United States v. $8,880 in United States Currency*, 945 F. Supp. 521, 523-524 (W.D.N.Y. 1996) (internal quotation marks omitted). The Government need not link the [subject] property to a particular transaction or show a substantial connection between the drug activities and the property in question, "but only a nexus between them." *Id., quoting United States v. Daccarett*, 6 F.3d 37, 55 (2d Cir. 1993). Such a nexus may be established through the use of circumstantial evidences. *See Daccarett*, 6. F.3d 37 at 56.
>
> Once the Government meets its burden of proof to establish probable cause, "the ultimate burden of proving that the factual predicates for forfeiture have *not* been met" shifts to the claimant. *United States v. One Parcel of Property Located at 15 Black Ledge Drive*, 897 F.2d 97, 101 (2d Cir. 1990) (emphasis added).

*Sum of $185,336.07*, 858 F. Supp. 2d at 247-48.

This legal framework, supported by citations to pre-CAFRA cases, is not applicable to this forfeiture action, which was

commenced after the year 2000, the effective date of CAFRA.  *See* CAFRA, Pub. L. No. 106-185, 114 Stat. 202 (2000); *$557,933.89, More or Less, in U.S. Funds*, 287 F.3d at 76 n.5 (noting that "the new forfeiture proceedings apply only to proceedings commenced on or after August 23, 2000").  The District Court stated three outdated standards from pre-CAFRA case law: (1) it required the government to show "reasonable grounds" for forfeiture based on the less-stringent "probable cause" requirement, *see, e.g.*, *Daccarett*, 6 F.3d at 55; (2) it rejected the more demanding "substantial connection" test laid out in CAFRA, *see* 18 U.S.C. § 983(c)(3), in favor of the outdated "nexus" test, which courts no longer apply; and (3) most problematically, it placed the ultimate burden of proof on Pellegrino by using a burden-shifting framework which CAFRA had overhauled.

The District Court then applied this outdated burden-shifting framework in its analysis.  It first found "that the Government ha[d] demonstrated *probable cause* for forfeiture here."  *Sum of $185,336.07*, 858 F. Supp. 2d at 248 (emphasis added).[7]  In line with a burden-shifting framework, the Court then turned to Pellegrino's "attempt[ ] to demonstrate that grounds for forfeiture do not exist," *id.* at 249,

---

[7] The government notes this error in its appellate brief, but labels it a mistake of "nomenclature" rather than an application of outdated law.  *See* Appellee Br. 10 n.4.  In support of this argument, the government points out that the District Court used the correct term, "preponderance of the evidence," at the end of its opinion in evaluating the "totality of the circumstances."  *Id.*  As noted above, however, the District Court defined the applicable forfeiture standard incorrectly at the outset of the opinion, relying entirely on case law antedating the enactment of CAFRA.  In addition, the pre-CAFRA framework used the "preponderance of the evidence" standard when describing the *claimant's* burden of proof, *see United States v. Parcel of Prop.*, 337 F.3d 225, 232 (2d Cir. 2003), and the language in the District Court's opinion to which the government refers does not specify which party bore the burden of proof in this case.  Regardless, this language does not remedy the District Court's application of the outdated "nexus" test instead of the more-stringent "substantial evidence" test.

before ultimately holding that the entire account balance was traceable to illegal narcotics activity.

Accordingly, the District Court committed error that was clear and obvious under current law.

**3.**

This error affected Pellegrino's substantial rights because the evidence of record falls well short of demonstrating, by a preponderance of the evidence, under CAFRA, that *all* of the seized money constituted proceeds from federal drug crimes. On May 25, 2004, Pellegrino made his first deposit into the seized brokerage account in the amount of $100,000. From October 2004 through April 2007, Pellegrino made steady deposits into the seized account that amounted to roughly $25,000 per year. Based on the volume of controlled substances seized from Pellegrino's home, the testimony of a confidential informant, and the absence of any legitimate source of income, the Court found that all of these funds—including the initial $100,000 deposit—were the proceeds of illegal drug sales. *See Sum of $185,336.07*, 858 F. Supp. 2d at 248-49.

Yet the evidence does not support this conclusion as to the initial $100,000 deposit. First, the District Court found, without adequate evidentiary support, that Pellegrino's illegal drug activities spanned a four-year period, beginning in 2003 and ending with his arrest in 2007. In making this finding of fact, the Court relied primarily upon the "testimony of a confidential informant that he had engaged in over 700 purchases of controlled substances from [Pellegrino] *over the previous four years*." *See Sum of $185,336.07*, 858 F. Supp. 2d at 248 (emphasis added). Yet the confidential informant's own affidavit attests to "approximately 700 [prescription drug] transactions" with Pellegrino during the time period "[o]n or about and between *Spring 2005 through May 2007*."

App'x 84, ¶ 2, 4 (emphasis added).[8]  Accordingly, the initial $100,000 deposit, which was made on May 25, 2004, occurred before the applicable two-year period.  Second, even assuming *arguendo* that Pellegrino was selling drugs in May 2004, the evidence is insufficient to support seizure of the entire $100,000.  The Court's decision assumes, without explanation, that the scope of Pellegrino's illegal enterprise amounted to $100,000 in proceeds in 2004, but then decreased considerably to only $25,000 per year in subsequent years.  Another, arguably more plausible inference at the summary judgment stage is that most, if not all, of the $100,000 deposit constituted prior savings, which Pellegrino had earned from legitimate sources.

These errors merely underscore the weakness of the government's case at the summary judgment stage, and the extent to which the District Court's application of the less-strenuous pre-CAFRA legal framework prejudiced Pellegrino.

---

[8] The District Court's reliance upon a four-year timeframe might stem from Officer Tuttle's affidavit, in which Officer Tuttle states that another officer informed him that a confidential informant had been purchasing prescription drugs from Pellegrino for four years.  *See* App'x 53 ¶ 34, 79.  Pre-CAFRA case law recognized an exception, no longer applicable, in civil forfeiture actions to the typical requirement that affidavits be based upon personal knowledge and admissible evidence.  *See United States v. One Parcel of Prop. Located at 15 Black Ledge Drive, Marlborough, Conn.*, 897 F.2d 97, 101–02 (2d Cir. 1990) ("In view of the unusual relative burdens of proof in civil forfeiture proceedings . . . the government [is allowed] to establish probable cause on the basis of hearsay affidavits" so long as the information contained therein is reliable.).  However, in a civil forfeiture proceeding under CAFRA, there is no basis for admitting the "double" hearsay contained in Officer Tuttle's affidavit.  *See United States v. $92,203.00 in U.S. Currency*, 537 F.3d 504, 510 (5th Cir. 2008) ("[B]y enacting CAFRA, Congress intended to end the practice of reliance on hearsay in civil forfeiture decisions.  The Government's only argument to the contrary rests on outdated cases that use the pre-CAFRA probable cause standard, which obviously does not apply to this post-CAFRA proceeding.").

**4.**

Lastly, the District Court's application of the pre-CAFRA legal standard undermined the fairness of its decision—particularly because that error was obscured by repeated references in the opinion to a "preponderance of the evidence" standard that was defined in the form prescribed by pre-CAFRA law. Moreover, the decision deprived Pellegrino, a 66-year-old retiree, of what may well be a substantial amount of legitimate savings. Based on the foregoing, we exercise our discretion to recognize plain error in the circumstances presented by this case. *See* note 6 and accompanying text, *ante*. The proper course, in our view, is to remand for further proceedings at which the CAFRA legal-standards are properly applied.

**CONCLUSION**

To summarize, we hold that:

(1) The District Court did not err in not providing, *sua sponte*, Pellegrino with an "accommodation" after his invocation of the Fifth Amendment right to silence.

(2) The District Court did not improperly "sanction" Pellegrino for discovery violations by granting summary judgment pursuant to Federal Rule of Civil Procedure 56.

(3) In holding that Pellegrino's assets were subject to forfeiture, the District Court did not violate the Eighth Amendment's prohibition on disproportionate punishment because the Eighth Amendment does not apply to forfeitures under 21 U.S.C. § 881(a)(6).

(4) By applying a pre-CAFRA standard for civil forfeiture proceedings, the District Court "plainly" erred in contravention of established law. The error affected Pellegrino's substantial rights—particularly in light of evidence indicating that not all of the seized assets were proceeds of federal drug crimes—and, in our view, seriously affected the fairness of the civil forfeiture proceeding.

For the reasons stated above, we **VACATE** the District Court's May 4, 2012 judgment, and **REMAND** the cause for further proceedings consistent with this opinion.