UNITED STATES of America,

v.

Sergio Shanlate FIGUEREO a/k/a Anibel Sanchez, Defendant.

No. 92–CR–0452.

United States District Court,
N.D. New York.

Oct. 9, 2001.

Joseph A. Pavone, Esq., United States Attorney, Northern District of New York, Albany, NY, for the United States, Barbara D. Cottrell, Esq., Assistant United States Attorney, Of Counsel.

Alexander Bunin, Esq., Federal Public Defender, Northern District of New York, Albany, NY, for the Defendant, Paul J. Evangelista, Esq., Assistant Fed. Public Defender, Of Counsel.

### MEMORANDUM—DECISION & ORDER

MCAVOY, District Judge.

### I. Background

Defendant plead guilty to one count of failure to report monetary instruments of

more than $10,000.00 in violation of 31 U.S.C. §§ 5316 and 5322(a). The offense conduct arose from an arrest on September 2, 1992 when the defendant was caught bringing $21,607.00 across the United States' boarder at Rouses Point, New York, $18,000.00 of which was concealed in the waistband of this pants. *See* Presentence Report (PSR), ¶¶ 5–13. Mr. Figuereo then represented his name to be "Anibel Sanchez" and presented a United States Passport, Puerto Rican birth certificate, Social Security card, and New York State Driver's License all of which contained that same alias. On September 3, 1992, the defendant was arraigned in the United States District Court for the Northern District of New York and, on September 8, 1992, a detention hearing was held in the same court. At both proceedings defendant continued the ruse regarding his identity. He was released on $5,000.00 unsecured bond and thereafter failed to return to court and escaped prosecution for over eight years until he was arrested on January 30, 2001 in the Southern District of New York when he attempted to report a burglary.

On August 9, 2001, defendant was sentenced to, *inter alia,* a term of imprisonment of 9 months. Judgment was entered on the same date. On the afternoon of October 3, 2001, the Defendant through his

counsel, sought an order from this Court requiring the government to show cause why "Mr. Shanlate Figuereo should not remain on release continuing the court's order of February 12, 2001,[1] pending the outcome of his appeal to the Second Circuit Court of Appeals." Order to Show Cause, Dkt. # 31. The proposed Order to Show Cause contained a "Notice of Motion" setting the return date of the Order to Show Cause for October 9, 2001. The stated reason that motion had to be returnable on October 9, 2001 is that Mr. Figuereo's reporting date for his term of incarceration is October 10, 2001. The stated reason that the motion was brought almost sixty days after the defendant was sentenced and merely two and one-half business days before the sought-after return date of the motion[2] is that the defendant was awaiting the transcript of the sentencing hearing.[3] In an effort to address this motion in a timely fashion, the Order to Show Cause was signed and the government was given less than two business days to respond (*e.g.* from the morning of October 4, 2001 to the afternoon of October 5, 2001) so that the Court would receive the government's position before the return date picked by the defendant.

The government argues that the Court lacks jurisdiction to extend the defendant's

---

**1.** On February 12, 2001, the defendant appeared before United States Magistrate Judge Ralph W. Smith, Jr., and bail was set at $5,000.00 bond secured by cash. On February 13, 2001, the defendant surrendered his Dominican Republic Passport, made bail, and was released from custody pending further proceedings. *See* PSR, ¶ 13.

**2.** October 8, 2001 is a legal holiday recognized by the Court, Court Clerk's Office and, it is assumed, by the Offices of the Federal Public Defender and the United States Attorney. October 6 and 7 are a Saturday and Sunday, respectively, during which the Court and Court Clerk's Office was closed for public business.

**3.** There is no indication that defense counsel, who also represented the defendant at the time of the sentencing, sought the transcript by expedited means to address this matter in a fashion which would have given the government appropriate time to reply. Further, it should be noted that while the moving papers indicate that the sentencing transcript was attached thereto, the copy of the papers sent by facsimile to the Court lacked this transcript. As indicated in the body of this decision, that transcript (which the Court obtained of its own initiative) is critical to a determination of this motion.

reporting date in that a notice of appeal was filed on August 15, 2001, Fed. R.App. P. 9(b), and that, assuming the motion is one seeking bail pending appeal pursuant to Fed. R.App. P. 9(b), it opposes the motion because it is untimely and because no basis for the relief exists.

## II. Discussion

The Second Circuit has held that an application for post-judgment release under Fed. R.App. P. 9(b)[4] should be made to the district court in the first instance as a motion pursuant to 18 U.S.C. § 3143, especially where the appeal has not been fully briefed and argued. *See United States v. Hochevar*, 214 F.3d 342, 343–44 (2d Cir.2000). The Court will therefore treat the instant motion as one made pursuant to 18 U.S.C. § 3143. To the extent pertinent here, that section provides as follows:

> [T]he judicial officer shall order that a person who has been found guilty of an offense and sentenced to a term of imprisonment, and who has filed an appeal or a petition for a writ of certiorari, be detained, unless the judicial officer finds—
>
> (A) by clear and convincing evidence that the person is not likely to flee or pose a danger to the safety of any other person or the community if released ...; and
>
> (B) that the appeal is not for the purpose of delay and raises a substan-

tial question of law or fact likely to result in-

> (i) reversal,
>
> (ii) an order for a new trial,
>
> (iii) a sentence that does not include a term of imprisonment, or
>
> (iv) a reduced sentence to a term of imprisonment less than the total of the time already served plus the expected duration of the appeal process.

18 U.S.C. § 3143(b)(1).

The Court notes that defense counsel has proffered a number of reasons for the relief which are directly contradicted by the record and which raise questions in the Court's mind as to the good faith basis of such assertions. *See e.g.* 18 U.S.C. § 3143(b)(1)(B) ("[T]hat the appeal is not for the purpose of delay ....")

### 1. *Defendant not likely to flee*

■ Defense counsel argues that the first prong of the Section 3143(b)(1) test is met because the Court did not remand the defendant at the time of sentencing, "implicitly [finding] by clear and convincing evidence that Mr. Shanlate Figuereo was not likely to flee and did not poses a danger to the safety of any other person or the community in accordance with 18 U.S.C. § 3142(b)." Def. Mem. Law, p. 4. What Counsel fails to add is that, at the sentencing, the Court stated after passing sentence: "I probably should remand you

4. Rule 9 of the Federal Rules of Appellate Procedure, which governs release in a criminal case, provides as follows with respect to a request for release after a judgment of conviction has been entered:

**(b) Release After Judgment of Conviction.** A party entitled to do so may obtain review of a district-court order regarding release after a judgment of conviction by filing a notice of appeal from that order in the district court, or by filing a motion in the court of appeals if the party has already filed a notice of appeal from the judgment

of conviction. Both the order and the review are subject to Rule 9(a). The papers filed by the party seeking review must include a copy of the judgment of conviction. Fed. R.App. P. 9(b). FRAP Rule 9(a), which governs release prior to a judgment of conviction, provides, in pertinent part, that "[t]he district court must state in writing, or orally on the record, the reasons for an order regarding the release or detention of a defendant in a criminal case." Fed. R.App. P. 9(a)(1).

at this time but I don't see a Marshal in sight so I'm not going to." Sent. Trans. P. 15. This decision was more the result of inertia and the practical realities created by an institutional mistake than an "implicit" pronouncement that the defendant is unlikely to flee, especially given the fact that the defendant *did* flee the jurisdiction of the Court for over eight years. Further, as defense counsel fails to mention in his moving papers, at the sentencing the Court imposed an obstruction of justice enhancement, USSG § 3C1.1, and denied the acceptance of responsibility downward adjustment, USSG § 3E1.1, *because* the defendant falsely reported his name as Anibel Sanchez which consequently allowed him to escape prosecution for over eight years. *See* Sent. Trans. pp. 11–13. The evidence presented by the defendant on his risk of flight, relying solely on the Court's "implicit" pronouncement, is hardly clear and hardly convincing. Rather, as indicated by the Court on August 9, 2001, the Defendant should have been remanded at the time of sentencing because of the risk of flight.

### 2. *Appeal ... raises a substantial question of law or fact*

█ Assuming, however, that the appellate court determines that defendant is not a flight risk, the Court addresses the defendant's contentions that the appeal raises a substantial question of law or fact likely to result in a reversal, a sentence that does not include a term of imprisonment, or a reduced sentence to a term of imprisonment less than the total of the time already served plus the expected duration of the appeal process.

As indicated, the defendant has raised a number of grounds for the application, attributing error to the Court's sentence on each. The first is that the Court erred in applying the 1991 version of the United States Sentencing Guidelines. In this regard, he argues that it was in violation of the *ex post facto* clause to calculate the sentence under the 1991 Guidelines because, he asserts, the 2000 manual was more beneficial to the defendant. He claims in this regard that the Court erred by not employing the "one book rule" which prevents picking and choosing between the 2000 and 1991 Guidelines. He also impliedly asserts the Court erred by applying the 1991 guidelines as opposed to the 1992 guidelines "even though the offense conduct occurred in 1992." Def. Mem. Law., p. 3.

Second, the defendant argues that the Court erred by not enunciating specific factual findings as to why a specific offense characteristic was not applied (USSG § 2S1.3(b)(2)). Third, he argues that the Court erred by not addressing the evidence that the defendant presented in support of the USSG § 2S1.3(b)(2) specific offense characteristic. And Fourth, that the Court erroneously held that the defendant did not meet his burden in establishing his entitlement to the decrease afforded by USSG § 2S1.3(b)(2).

The Court will address each of these contentions although not in the order presented by the defendant.

### A. USSG § 2S1.3(b)(2)

Much of the dispute in this case arise from the Court's determination not to apply the Specific Offense Characteristic at USSG § 2S1.3(b)(2). There appears to be no dispute that this provision was available under the 2000 Guidelines but not under the 1991 or 1992 Guidelines.

USSG Section 2S1.3(b)(2) allows for a reduction of the base offense level to level 6 if: (A) subsection (b)(1) thereof does not apply; [5] (B) the defendant did not act with

---

5. Subsection (b)(1) provides for a two point increase where the evidence demonstrate that

defendant knew or believed that the funds

reckless disregard of the source of the funds in issue; (C) the funds were the proceeds of lawful activity; and, (D) the funds were to be used for a lawful purpose. *See* USSG § 2S1.3(b)(2). The elements are in the conjunctive. Defendant bears the burden of demonstrating his entitlement to same by a preponderance of the evidence. *United States v. Gambino*, 106 F.3d 1105, 1110 (2d Cir.1997).

The focus of USSG § 2S1.3(b)(2) in this case was whether the $21,607.00 found on the defendant at the time of commission of his crime was from and for legal purposes.

Defendant had asserted to the Probation Officer preparing the PSR that all of the money came from his business and was for the purpose of car purchases. However, the government pointed out that on September 2, 1992, during an interview with U.S. Customs Service, "the defendant said he went to Canada looking to purchase . . . automobiles . . . ." and "went to several car dealers, but he could not remember their names or locations." PSR ¶ 8. In 1992, the defendant initially denied the money was his. The PSR also indicated that, at the time of his arrest, defendant was accompanying his brother who was attempting to illegally enter the United States. *See* PSR ¶ 9. Defendant also denied that he was traveling with or knew the individual later identified as his brother, *id.*, and it appeared that the defendant may have aided his brother's crime by buying him the ticket on the train they were both riding. *Id.*

Prior to sentencing, defendant presented a notarized letter from his father-in-law which attested that his father-in-law gave defendant $9,500.00 to purchase used cars on his trip to Canada. Therefore, defendant argued, the money on him at the time was for lawful purposes. The government argued that even assuming the Court ac-

cepted the proposition of the letter, it still did not account for the remaining $12,107.00 which the defendant had on him when he was arrested. *See* PSR, ¶ 7. The government also cited to cases which stand for the proposition that the possession of large sums of cash *could* raise an inference of illegal activity. *See United States v. $31,990 in U.S. Currency*, 982 F.2d 851, 854 (2d Cir.1993) ("While we have stated that a person who carries [large] amounts of cash is 'either inordinately carefree with his money' or is involved in illegal activity, we have not held that the possession of large amounts of cash is *per se* evidence of drug-related illegal activity. We decline to so hold here."); *United States v. $8,880 in U.S. Currency*, 945 F.Supp. 521, 526 (W.D.N.Y.1996).

At the time of sentencing, defense counsel argued that the remaining funds were from legitimate business activities but not claimed as such in 1992 because they were derived from "under the table" business transactions which the defendant engaged in because, at the time, he was an illegal alien and did not want to claim his income. Sent. Trans. p. 5. Counsel further argued that he "took contention" with the government's position that the defendant could not carry his burden of demonstrating legitimate sources of the money simply because he could not name the businesses he went to in Canada. Counsel pointed out that at paragraph 18 of the Presentence Report, defendant identified the person who supposedly told him that he could purchase cars in Canada more inexpensively than in the United States. Counsel argued that the government could have contacted this third party to "verif[y] the veracity" of defendant's contention of going to various car dealership to purchase vehicles. He also argued that because defendant was able, in 1992, to name the

were proceeds of unlawful activity, or were       intended to promote unlawful activity.

specific automobiles he was shopping for (four cylinder Hondas), the amount of the purchase price in Canada as compared to the United States ($1000.00 less than in the United States) and what he planned to do with the automobiles (ship them to the Dominican Republic), his story was not fictitious. Sent. Trans. p. 6. Counsel argued, therefore, that defendant "met [his] burden as far as proving the legitimate source of funds and the legitimate purpose of the funds." *Id.*

Counsel offered no new evidence at the sentencing hearing and the defendant said nothing in his own behalf other than to express his remorse. Sent. Trans. p. 10. The government relied on its sentencing memorandum. *Id.*, p. 9.

### 1. The Court's application of USSG § 2S1.3(b)(2)—Specific Findings and consideration of the defendant's "evidence."

After affording both parties the right to present all evidence and argument they wanted on the USSG § 2S1.3(b)(2) issue, the Court concluded that neither the government nor the defendant had satisfied their burdens set out in 2S1.3(b)(2) and therefore determined not to apply the specific offense characteristic reduction of USSG § 2S1.3(b)(2). The defendant argues that:

> [T]he court did not state why it found the defendant failed to carry his burden proving funds were the proceeds of lawful activity and were not going to be used for unlawful activity. USSG 2S1.3(b)(2). The court did not address the documents the defendant had sub-

mitted in support of his application for the adjustment.

Def.'s Mem. Law, p. 2.

Both contentions of this statement are directly contradicted by the sentencing transcript. In this regard, the Court stated:

> First of all, I think that neither the government nor the defendant have satisfied their burdens set out in 2S1.3(b)(2), either a, b, c, or d but the Court, even by accepting the $9,500 was from the father-in-law, I have no reason not to accept that. The remainder of the source of the funds is certainly questionable and the way it was transported across the boarder in the waistband of his pants; the fact he denied having it and lied about that; the fact that although he did put forward Mr. Santo's name as a source of information in Montreal that enabled him to learn about the difference in shipping costs and buying costs as far as Hondas were concerned to ship to the Dominican Republic. He wasn't able to tell the people at the boarder one place. Maybe the names you argued, Mr. Evangelists, wouldn't have been important to him like Montreal, Honda or whatever it might have been. At least he could have told the people where those places were so they could have verified that he did that.

Sent. Trans. p. 10–11.

This part of the sentencing transcript states specifically the reason for the Court denying the application for the reduction *and* addresses the "evidence" submitted by the defendant.[6] As stated, the defen-

---

6. Defendant's counsel also asserts that he "presented evidence that the money confiscated was legitimately obtained through savings and loans from relatives" which the Court did not address or consider. Def. Mem. Law., p. 2. However, other than the letter from the defendant's father-in-law, the other letters

from the defendant spoke only to his character. As indicated at page 3 of the sentencing transcript, the Court advised the defendant and his counsel that it had reviewed all of the letters submitted by the defendant. Sent. Trans. p. 3, 1.16–17.

dant bears the burden of establishing his entitlement to the beneficial decrease afforded by USSG § 2S1.3(b)(2). *United States v. Gambino*, 106 F.3d at 1110. The Court credited the evidence from his father-in-law that he had been given $9,500.00 to purchase used cars, but this still left $12,107.00 which the defendant had on him when he was arrested for which he offered no proof of legitimate source. Sent. Trans. p. 11; *See* PSR, ¶ 7. Under the circumstances of the case, his explanation that the money was from legitimate sources is wholly unsupported.

Likewise, defendant's contention that the money was intended for lawful purposes, despite his inability immediately upon returning from Canada to name any of the location he supposedly attempted to buy cars, is insufficient to carry his burden. Further, when combined with the highly suspicious circumstances of his arrest including: (a) being with his brother who was himself attempting to illegally enter the country; (b) lying about his ownership of the money; and (c) secreting the money in his waistband, the Court chose not to credit the unsupported position of the defendant.

Absent some proof to establish the factors of USSG § 2S1.3(b)(2), the scales did not tip in favor of the defendant. Attempting to pass the obligation to the government to prove a point on which the defendant bore the burden was obviously legally insufficient and hardly warranted comment.

The Court concludes that the Defendant's contentions regarding the specificity of the Court's finding and the application of the applicable burden are unsupported by the record and do not create a substantial question attacking the sentence in this matter. The reason that the Court did not apply the Specific Offense Characteristic of USSG § 2S1.3(b)(2) is set out with sufficient specificity to allow appellate review.

*United States v. Reed,* 49 F.3d 895 (2d Cir.1995). The Court made specific findings based upon the parties' proffered proof and arguments and which formed the basis of the Court's decision to deny the application of this provision. *Id.* at 901.

### B.  2000 or 1991 Guidelines

Defendant argues that it was error to address the Specific Offense Characteristic of USSG § 2S1.3(b)(2) (which was *not* available under the 1991 sentencing guidelines) and then, after it was determined that the this specific offense characteristic did not apply, determine whether the 1991 or the 2000 Guidelines would be more beneficial to the defendant. Counsel argues in his Memorandum of Law in support of the Order to Show Cause: "In response to the Presentence Report, the defendant through his counsel sought the application of the 2000 edition of the United States Sentencing Guidelines." Yet, the defendant's "Sentencing Memorandum," Letter Mem. dated July 31, 2001, Dkt. # 20, directly contradicts this contention. In this regard, the Sentencing Memorandum argues:

> **If the Court does not apply the Specific Offense Characteristic** [of USSG § 2S1.3(b)(2) ], it appears the 1991/92 sentencing guidelines should apply .... **In the latter scenario the 1991 book should be used** because the 2000 book results in a higher total adjusted level, in violation of the ex-post facto clause.

*Id.* p. 2–3 (emphasis added).

At sentencing, the Court *first* determined that the § 2S1.3(b)(2) reduction did not apply and *then* calculated the sentencing ranges using the 1991 and the 2000 Guidelines. The Court chose the 1991 Guidelines because they were more beneficial to the defendant. Sent. Trans. p. 13. Not only did the defense counsel fail to

object to this procedure at the hearing, *United States v. Keppler,* 2 F.3d 21, 23 (2d Cir.1993) (sentencing issues not raised in the trial court will be deemed waived on appeal and only addressed upon a showing that the district court committed plain error), the Court did exactly what the what the defendant asked for.

Further, the Court's procedure does not violate the *ex post facto* clause. *United States v. Rodriguez,* 989 F.2d 583, 587 (2d Cir.1993). A potential *ex post facto* violation arises if "the version of the Guidelines used at sentencing results in a more severe sentence than that which would have resulted had the Guidelines version in effect at the time of commission of the crime been applied." *Id.* at 587; *see* 18 U.S.C. § 3553(a)(4)(A).

Had the 1991 version been used at the outset, USSG § 2S1.3(b)(2) would not have been available; defendant has cited to no authority to demonstrate that the application of the obstruction of justice enhancement or the acceptance of responsibility adjustment was more strenuous under the 1991 Guidelines as compared to the 2000 Guidelines.[7] Thus, had the Court stayed with the 2000 Guidelines after determining

that USSG § 2S1.3(b)(2) did not apply, Defendant's sentencing guideline range would have been *higher* than under the 1991 version.[8] Thus, the defendant would have an *ex post facto* argument *only if* the 2000 Guidelines had been used after it was concluded that the Specific Offense Characteristic of USSG § 2S1.3(b)(2) did not apply.

Assuming *arguendo* it was error for the Court to determine the applicability of USSG § 2S1.3(b)(2) before determining which provisions of the guidelines to apply, that error was harmless from the defendant's perspective. Second Circuit decisions have established that if a defendant could have received an identical sentence "in the absence of the alleged error," the district court's application of the Guidelines is not in error. *United States v. Diaz,* 176 F.3d 52, 118 (2d Cir.1999), *cert. denied, Rivera v. U.S.,* 528 U.S. 875, 120 S.Ct. 181, 145 L.Ed.2d 153 (1999); *Keppler,* 2 F.3d at 24. Here, the procedure was requested by the Defendant and actually benefitted him. He was sentenced below the applicable guideline range available had the Court applied the 2000 Guidelines. There can be no argument that the

---

7. An obstruction of justice enhancement is ordinarily inconsistent with a finding of acceptance of responsibility. According to Application Note 4:

> Conduct resulting in an enhancement under § 3C1.1 (Obstructing or Impeding the Administration of Justice) ordinarily indicates

that the defendant has not accepted responsibility for his criminal conduct. There may, however, be extraordinary cases in which the adjustments under both §§ 3C1.1 and 3E1.1 may apply.

U.S.S.G. § 3E1.1 comment. (n.4) (same in 1991 & 2000 Manuals).

8.

|  | 1991 | 2000 |
|---|---|---|
| Base Offense Level. | 9 (§2S1.4(a)) | 10 * (§ 2S1.3(a)) |
| Specific Off. Char. | 0 | 0 |
| Obstruction | 2 | 2 |
| Adjust. Off. Lev. | 11 | 12 |
| Acceptance | 0 | 0 |
| Total Off. Lev. | 11 | 12 |
| Guideline Range (Crim. Hist I) | 8–14 (Zone C) | 10–16 (Zone C) |

* Base offense is 6 plus 4 (increased offense levels for amount of money from § 2F1.1)

*ex post facto* clause was violated or that he was prejudiced by the Court's decision to use the 1991 Guidelines. *See United States v. Acevedo,* 229 F.3d 350, 358 (2d Cir.2000) ("Because the district court did not err in its decision to apply the 1998 Guideline, which was no more stringent than the provision in effect when the commission of Acevedo's offense was complete, Acevedo is unable to show either an *ex post facto* violation or any prejudice resulting from trial counsel's failure to object to the court's decision. Therefore, we reject Acevedo's claims on these grounds as well."), *cert. denied,* 531 U.S. 1027, 121 S.Ct. 602, 148 L.Ed.2d 514 (2000).

Further, the PSR calculated the defendant's sentence using the 1991 Sentencing Guidelines which where were not amended until after the commission of the underlying crime. *See Rodriguez,* 989 F.2d at 587 (In determining whether *ex post facto* problem exists, the Court compares Guidelines at time of sentencing [here, 2000 Guidelines despite sentencing taking place on August 9, 2001] with those in effect at the time of commission of the crime [on September 2, 1992, 1991 Guidelines were in effect]). As indicated above, Defendant did not object to this calculation, arguing only three points related to certain adjustments.[9]

Still further, the 1991 and the 1992 sentencing guidelines were identical in all aspects relevant to this sentencing, neither of which included the specific offense characteristic reduction which defendant sought under the 2000 Guidelines manual at Section 2S1.3(b)(2).

Finally, the defendant indicates that his brief on the underlying appeal is due to the Court of Appeals for the Second Circuit on October 29, 2001. The government argues that there is no indication that this defendant's appeal will not be "handled with the Second Circuit's characteristic efficiency." Govt. Let. Mem., p. 3. The Court has no reason to expect otherwise. Even assuming the Court erred in application of the 1991 Guidelines, the resultant sentence using the 2000 Guidelines would not have been reduced from that imposed. Thus, calculating reasonable amount of time for the Court of Appeals to address the appeal, and recognizing that the defendant has served little incarceration presentence, the Court does not see that the appeal will result in a reduced sentence to a term of imprisonment less than the total of the time already served plus the expected duration of the appeal process.

### III. Conclusion

For the reasons set forth above, the Court finds that defendant has not demonstrated by clear and convincing evidence that he is not likely to flee if released; or that his appeal raises a substantial question of law or fact likely to result in reversal, a sentence that does not include a term of imprisonment, or a reduced sentence to a term of imprisonment less than the total of the time already served plus the expected duration of the appeal process. Therefore, defendant's motion is **DENIED.**

**IT IS SO ORDERED.**

---

9. The only three disputed areas were whether the § 2S1.3(b)(2) reduction applied, whether an obstruction of justice enhancement applied, and whether acceptance of responsibility applied. Sent. Transcript., p. 4.